No. DA 06-0175

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 154

MONTANA SOLID WASTE CONTRACTORS, INC.
and ALLIED WASTE SERVICES OF NORTH
AMERICA, LLC (formerly BFI Waste Systems
of North America, Inc.),

        Petitioners and Appellants,

    v.

MONTANA DEPARTMENT OF PUBLIC
SERVICE REGULATION; THE MONTANA
PUBLIC SERVICE COMMISSION; and
MACKENZIE DISPOSAL, INC.,

        Respondents and Respondents.

APPEAL FROM:     The District Court of the First Judicial District,
                       In and For the County of Lewis and Clark, Cause No. BDV 2001-252,
                       Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Montana Solid Waste Contractors:

                G. Steven Brown, Attorney at Law, Helena, Montana

        For Appellant Allied Waste Services of North America, LLC:

                Frank C. Crowley, Doney Crowley Bloomquist Payne Uda, PC,
                Helena, Montana

        For Respondent Montana Public Service Commission:

                Al Brogan, Staff Attorney, Montana Public Service Commission,
                Helena, Montana

        For Respondent MacKenzie Disposal, Inc.:

                  Tom Singer, Axilon Law Group, PLLC, Billings, Montana

                Jerome Anderson, Attorney at Law, Helena, Montana

Submitted on Briefs:  December 20, 2006

Decided:  June 26, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The genesis of this dispute is a solid waste transportation certificate issued by the Montana Public Service Commission (PSC, the Commission or Agency) in 1977 to Suhr Transportation.[1] Suhr sold the certificate to Jim's Excavating in 1992 and Jim's transferred it to WWSS Inc. in 1993. MacKenzie Disposal bought it from WWSS in 1999. The PSC approved each transfer. Montana Solid Waste Contractors (MSWC) and Allied Waste Services[2] (Allied), alleged that Suhr, Jim's and WWSS failed to comply with the applicable rules and the PSC failed to enforce those rules. While they argued that all three previous owners violated the rules, they emphasized the alleged failings of WWSS. As a result of these violations MSWC and Allied posited that MacKenzie's certificate was invalid at the time it was transferred to MacKenzie and should be revoked.

¶2 After a contested hearing proceeding before the PSC, the PSC determined, among other things, that MacKenzie's certificate is valid, that MacKenzie was, and had been, operating within the scope of authority granted by Certificate 9265, and that it could not revoke the certificate based on any alleged or actual violations by previous holders of the certificate. MSWC and Allied appealed the PSC's Final Order to the First Judicial District Court, Lewis and Clark County. The District Court affirmed the PSC's Order.

---

[1] The certificate has had several numerical identities since its inception (e.g., Certificate 541, Certificate 9135) but is currently designated Certificate 9265 and will be referred to as such in this Opinion.

[2] The original petitioner in this case was Browning-Ferris Industries Waste Systems, or BFI. During the pendency of these proceedings Allied Waste Industries, Inc. purchased BFI and changed the name. For ease of reference, we will refer to both BFI and Allied as Allied.

3

MSWC and Allied appeal the District Court's Order on Petition for Judicial Review. We affirm.

## ISSUE

¶3 MSWC and Allied present several issues on appeal. We conclude, however, that the dispositive issue is whether the PSC has the authority to revoke MacKenzie's certificate under the circumstances presented in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Montana motor carriers are divided into four classes—A, B, C and D. Class D motor carriers operate motor vehicles transporting garbage, or solid waste. Under § 69-12-314, MCA, Class D carriers must conduct their commercial operations pursuant to a "certificate of public convenience and necessity" issued by the PSC. Certificate 9265 is such a certificate.

¶5 Montana Solid Waste Contractors is a Montana non-profit corporation and trade association established in 1972 and located in Helena, Montana. Its members are private solid waste transportation businesses who operate throughout Montana under Class D certificates issued by the Montana Public Service Commission. Allied Waste Services, a Delaware corporation authorized to do business in Montana, owns and operates solid waste transportation businesses in Montana, including Billings. It conducts its business under Class D certificates issued by the PSC. The PSC is the head of the Montana Department of Public Service Regulation (Department). Section 2-15-2601, MCA. The Department administers the laws, rules and orders regulating motor carriers, including Class D motor carriers which transport solid waste. The PSC supervises, monitors, and

4

regulates Class D motor carriers. It has original jurisdiction over complaints lodged by members of the regulated community. MacKenzie Disposal, Inc. is a Montana corporation presently transporting solid waste in and around Billings, Montana, under Class D Certificate 9265.

¶6 Certificate 9265 was originally issued to Suhr Transportation in 1977. In 1992 the PSC authorized transfer of the certificate to Jim's Excavating. Jim's Excavating, in turn and with PSC approval, sold the certificate to WWSS in 1993. In August 1999 WWSS and MacKenzie applied for PSC approval allowing WWSS to sell the certificate to MacKenzie. Allied filed a protest to the proposed transfer. MacKenzie moved to dismiss the protest and in November 1999 the PSC approved the transfer over Allied's protest.

¶7 On January 14, 2000, MSWC and Allied jointly filed an initial complaint with the PSC which was subsequently amended on January 31, 2000. MSWC/Allied sought an order from the PSC revoking MacKenzie's Class D permit arguing, among other things, that the original permit was issued to WWSS in violation of law and the permit should have been voided for dormancy prior to being transferred to MacKenzie. The PSC did not serve MacKenzie with the joint complaint. In March 2001 the PSC *sua sponte* dismissed MSWC's and Allied's complaint. It ruled in part that the Class D permit was properly issued to WWSS and was not invalidated by WWSS inactivity. It also ruled that successor MacKenzie was operating in full compliance with the certificate.

¶8 In April 2001 MSWC/Allied filed their initial petition for judicial review in the District Court asserting, among other things, that the PSC (1) denied them their constitutional and statutory right to a contested case hearing, (2) refused to enforce

5

applicable statutes and rules by failing to serve their joint complaint on MacKenzie, (3) wrongfully dismissed their complaint *sua sponte*, and (4) denied MSWC/Allied their right to due process.

¶9     In February 2002 the parties stipulated to remand the matter to the PSC for a contested case hearing.  The District Court issued an order remanding the case.  The order specified that the following issues, among others, would be addressed in the contested case hearing: (1) whether Certificate 9265 should be deemed lapsed for non-use because WWSS and possibly other predecessor owners allegedly failed to comply with applicable hauling laws and regulations, (2) whether predecessor owners and the PSC complied with applicable statutory and regulatory provisions governing temporary suspensions of Class D hauling certificates and filing of annual reports, as such requirements impact a determination of whether a certificate is used on a "regular" basis, and (3) what MacKenzie, the previous owners and the PSC believed as of October 1999 was the territorial scope of service authorized by Certificate 9265 as it pertained to a determination of compliance with the "regular use" requirements.

¶10     Upon remand, MSWC/Allied filed their second amended complaint before the PSC.  This complaint was served on MacKenzie and MacKenzie filed an answer.  In its answer it asserted numerous affirmative defenses, one of which was the applicability of a two-year statute of limitations.  MSWC and Allied filed a consolidated brief arguing that MacKenzie was bound by the issues defined in the Stipulation Order and could not circumvent the Stipulation Order by invoking a statute of limitations defense.

¶11    A contested case hearing was held in January 2003 and continued in September and October 2003. During the hearing, the hearing officer received evidence of events that occurred outside of the argued statute of limitations with the caveat that the statute of limitations issue was still under advisement and could be used to subsequently eliminate consideration of earlier events.

¶12    In October 2004 the PSC again dismissed MSWC/Allied's complaint. In its order, the Commission concluded that a three-year statute of limitations applied to the proceeding and therefore excluded actions by the parties that occurred before January 14, 1997. It specifically held that WWSS did not violate any applicable statutes or Commission rules and orders between January 1997 and 1999 when it sold the certificate to MacKenzie. It also held that it did not have the authority to revoke MacKenzie's permit based on the conduct or activities of a prior certificate holder when no complaint or revocation proceeding was pending against the prior owner at the time of the transfer. Lastly, the PSC determined that MacKenzie's certificate was valid because MacKenzie was operating within the scope of authority granted under the certificate.

¶13    In November 2004 MSWC/Allied filed another petition for judicial review with the First Judicial District Court. They argued numerous errors by the PSC including, but not limited to, the Commission's (1) refusal to revoke the certificate based on WWSS's inactivity at the time WWSS held the certificate, (2) reliance on unwritten policies to justify declining to revoke the certificate, (3) failure to monitor and enforce applicable statutes and regulations pertaining to Class D certificate holder compliance, (4)

application of a three-year statute of limitations to the scope of the contested case hearing, and (5) failure to make requested findings of fact.

¶14   The District Court concluded that the PSC (1) appropriately applied a three-year statute of limitations, (2) did not abuse its discretion in concluding that WWSS did not violate any applicable statute, rule or commission order, (3) did not err in deciding that WWSS's use of the certificate was not "incidental," and (4) did not err in determining that Certificate 9265 could be used to transport Class D material from outside of Billings through the city and to the Billings landfill.  The District Court also held that MSWC and Allied were not denied their right to due process.  Having expressly found that WWSS did not violate any applicable law or orders, the court declined to address the PSC's determination that the Commission could not void the certificate based on alleged violations by prior owners.

¶15   MSWC and Allied filed a timely appeal, once again seeking revocation of MacKenzie's certificate.

## STANDARD OF REVIEW

¶16   Pursuant to the Montana Administrative Procedure Act (MAPA), a district court reviews an administrative agency's decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law.  *Baldwin v. Board Of Chiropractors*, 2003 MT 306, ¶ 10, 318 Mont. 188, ¶ 10, 79 P.3d 810, ¶ 10 (citation omitted).  The standard of review for an agency decision is set forth in § 2-4-704(2), MCA, which provides:

8

The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
(a) the administrative findings, inferences, conclusions, or decisions are:
(i) in violation of constitutional or statutory provisions;
(ii) in excess of the statutory authority of the agency;
(iii) made upon unlawful procedure;
(iv) affected by other error of law;
(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(b) findings of fact, upon issues essential to the decision, were not made although requested.

¶17 A finding is clearly erroneous if it is not supported by substantial evidence or, if it is supported by substantial evidence, because the agency misapprehended the effect of the evidence. Moreover, even if substantial evidence exists and the effect of the evidence has not been misapprehended, the court may still decide that a finding is clearly erroneous when "a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." *Weitz v. Dept. of Nat. Resources & Conserv.*, 284 Mont. 130, 943 P.2d 990 (1997). We in turn employ the same standards when reviewing the district court's decision, and must accordingly determine whether an agency's findings of fact are clearly erroneous and whether its conclusions of law were correct. *Roos v. Kircher Public School Bd.*, 2004 MT 48, ¶ 7, 320 Mont. 128, ¶ 7, 86 P.3d 39, ¶ 7.

**DISCUSSION**

¶18　As noted above, MSWC and Allied raised numerous issues on appeal and argued a multitude of errors on the part of the PSC and the District Court. Our review of the record indicates that some of these issues and allegations of error may be justified. Of particular concern is the allegation that the PSC failed to diligently execute the Commission's obligations to oversee the activities of the owners of Certificate 9265 throughout its existence. Troubling, too, is the assertion that the PSC engaged in surreptitious negotiations or revisions to certificate terms and elevated unwritten policy over written law resulting in Agency decisions that were detrimental to members of the regulated community. However, for the reasons discussed below we conclude that most of the raised issues are moot. While we do not therefore substantively address these allegations of misconduct on the part of the PSC, we, nonetheless, caution that in the future the Commission must vigilantly comply with its own rules and regulations as failure to do so will undermine the integrity of the PSC and the certification process, and potentially result in unfair and prejudicial treatment of certificate holders or certificate applicants.

¶19　The dispositive issue is whether the PSC has the authority to revoke MacKenzie's certificate under the circumstances presented in this case. MSWC and Allied argue that revocation is justified based on (1) the conduct of a previous owner, (2) the failure of the PSC to comply with its own rules and regulations, and (3) MacKenzie's "knowledge" that WWSS did not comply with the Commission's rules. We note initially that it is undisputed that MacKenzie, since its purchase of the certificate, has fully complied with the terms of the certificate and all applicable laws and orders. We therefore turn to the

question of whether the PSC has authority to revoke the certificate for failure of a previous owner to comply with applicable laws.

¶20 Just as the statutes set forth the process under which the PSC can issue a Class D certificate, the statutes provide the method by which it can suspend or revoke a certificate.

¶21 Section 69-12-210, MCA, states:

(1) The commission has jurisdiction to conduct investigations and hear complaints to determine whether a motor carrier has violated any of the commission's rules or orders or any provision of this chapter. (2) Following an opportunity for hearing and upon a finding that a motor carrier has violated any of the commission's rules or orders or any provision of this chapter, the commission may suspend or revoke the motor carrier's certificate of operating authority or impose any penalty provided for under 69-12-108.

Section 69-12-108, MCA, subjects a motor carrier regulated under Title 69 of the Montana Code Annotated to fines and civil penalties if found to be in violation of applicable rules, statutes or Commission orders. The statutes grant a right of review to a certificate holder accused of violating or refusing to observe the applicable statutes or PSC rules or orders. Section 69-12-327, MCA, states:

(1) If it appears that a certificate holder is violating or refusing to observe any of the commission's orders or rules or any provision of Title 69, as amended, the commission may issue an order to the certificate holder to show cause why the certificate should not be revoked. If the certificate holder fails to appear to show cause as ordered by the commission, the certificate may be revoked without a hearing. If the holder does appear to show cause, the commission may:
(a) dismiss the proceeding, notifying the holder that the certificate is not revoked; or
(b) hold a hearing on the question of revocation, notifying the holder of the time and place for the hearing.

11

(2) The holder of any such certificate or privilege shall have all rights of rehearing and review as to such order of the commission as is provided in this chapter.

¶22 The PSC's decision was two-fold. It first determined whether the applicable statutes were "self-executing." In other words, assuming WWSS was non-compliant with the applicable rules, did its non-compliance result in the "death" of the certificate and an automatic forfeiture. Second, and in the event the rules were not self-executing, the Agency considered whether it had the authority to suspend or revoke MacKenzie's certificate based on WWSS's conduct.

¶23 The PSC analyzed the above-referenced statutes as well as others and concluded that the statutes were not "self-executing." Sections 69-12-108, 210, and 327, MCA, all of which impose penalties on Class D carriers, require the PSC to take some action to implement these penalties—the penalties do not take effect automatically upon some proscribed act of the carrier. As a result of this conclusion, the PSC determined that even if WWSS had violated the applicable statutes the certificate would not have automatically, and without PSC action, been forfeited, suspended, or revoked; therefore, the certificate would not have been "dead" at the time it was transferred to MacKenzie. The PSC noted that this interpretation was consistent with the Interstate Commerce Commission's (ICC) treatment of similar certificates as held in *Smith Brothers, Revocation of Certificate*, 33 M.C.C. 465 (1942). In *Smith Brothers*, the ICC was considering the revocation of a certificate. Certain complainants contended that Smith Brothers had abandoned certain of their operations, and that, due to a provision in the certificate which required that the carrier continue to perform service in conformity with

12

the certificate, the rights of Smith Brothers were automatically forfeited for dormancy when they ceased to perform such services. The ICC determined that a certificate, once issued, could be terminated only by a formal proceeding and action by the issuing agency. *Hergott v. Nebraska State Ry. Commission*, 15 N.W. 2d 418 (Neb. 1944).

¶24 We agree with the PSC's interpretation. "Self-executing" simply means "taking effect immediately without the need of any type of implementing action." *Black's Law Dictionary* 1364 (7th ed., West 1999). The statutes above expressly provide for agency action before any penalty can be imposed; therefore they are not self-executing. *See, e.g., Crane v. State*, 200 Mont. 280, 650 P.2d 794 (1982); *Kraebel v. Michetti,* (Not Reported in F. Supp.), 1994 WL 455468, 1994 U.S. Dist. LEXIS 11796. Under the applicable statutes, even assuming prior holders of the certificate did not comply with the applicable laws, Certificate 9265 continued to be a viable certificate and was not forfeited. As such, it could be lawfully transferred to a subsequent buyer. Moreover, not only are the statutes not self-executing, but the language of the statutes requires a conclusion that revocation of MacKenzie's certificate would have to be premised upon *MacKenzie's* failure to comply with relevant statutes, rules or orders, not any alleged or actual failings of a previous certificate holder. *See*, *e.g.*, § 69-12-327, MCA.

¶25 Having determined that the penalty statutes are not self-executing and that revocation of a certificate can occur only through PSC action, we next address whether the PSC's alleged misconduct or failure to take enforcement action justifies revocation of MacKenzie's certificate. We conclude this is a non-justiciable and, thereby, moot issue. A justiciable controversy is one upon which a court's judgment will effectively operate,

13

as distinguished from a dispute invoking a purely political, administrative, philosophical or academic conclusion. Where a court's judgment will not effectively operate to grant relief, the matter is moot. *Clark v. Roosevelt County*, 2007 MT 44, ¶ 11, 336 Mont. 118, ¶ 11, 154 P.3d 48, ¶ 11 (citation omitted). As indicated above, the applicable statutes allow the PSC to revoke a certificate based solely on the certificate holder's non-compliance. Therefore, even if MSWC's and Allied's allegations of PSC misconduct were correct, neither we nor any other court could lawfully revoke a compliant certificate holder's certificate based on such misconduct. Simply put, there is no relief that can be granted for these allegations within the circumstances of this case.

¶26 MSWC and Allied also assert that the PSC incorrectly expanded the limits of the permit to include transporting waste that originated from outside of Billings to the Billings' landfill. Again, the misconduct being alleged is that of the PSC which, as explained above, even if assumed to be true is not justification for revoking MacKenzie's permit. It is undisputed that the scope of MacKenzie's certificate currently authorizes MacKenzie to transport waste originating from outside of Billings to the Billings' landfill. Therefore, we cannot revoke the certificate on this ground.

¶27 Lastly, we are unpersuaded by MSWC's and Allied's argument that MacKenzie knew, or should have known, that WWSS's certificate was "dormant" at the time it purchased the certificate. As explained above, even actual misconduct or non-compliance by a certificate holder does not automatically render a certificate dormant, suspended or revoked. Restrictions on the use of a certificate or penalties for failure to comply with rules must be affirmatively imposed by the Commission. As such,

14

MacKenzie's knowledge of WWSS's conduct or activity during the time WWSS held the certificate is irrelevant. The PSC had oversight authority over WWSS, not MacKenzie. At the time MacKenzie purchased the certificate, it was assured by the PSC that it was a viable certificate that would allow MacKenzie to conduct its desired business. Therefore, MacKenzie's alleged knowledge of WWSS's conduct is not ground for revocation of its certificate.

¶28 Having determined that the PSC does not have the authority to revoke a compliant certificate holder's certificate for a past holder's non-compliance or for PSC misconduct, we need not reach the correctness of the PSC's application of a three-year statute of limitations.

¶29 While the District Court declined to address the issue that we find dispositive, the court nonetheless correctly affirmed the PSC's order. We will uphold a district court that reached the right result even if for a different reason. *Bitterroot Inter. Sys. v. West. Star Trucks, Inc.*, 2007 MT 48, ¶ 43, 336 Mont. 145, ¶ 43, 153 P.3d 627, ¶ 43 (citation omitted).

## CONCLUSION

¶48 For the foregoing reasons, we affirm the District Court's and the PSC's Orders.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

15

/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JOHN WARNER