DA 07-0078

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 15

TOWN PUMP, INC.,

      Petitioner and Appellant,

  v.

PETROLEUM TANK RELEASE
COMPENSATION BOARD (Board) and
THE MONTANA DEPARTMENT OF
ENVIRONMENTAL QUALITY (DEQ),

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2006-266
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Patrick T. Fleming, Fleming & O'Leary, PLLP, Butte, Montana

      For Appellees:

            Hon. Mike McGrath, Montana Attorney General, Paul D. Johnson,
Assistant Attorney General, Helena, Montana

                       Submitted on Briefs:  December 6, 2007

                                Decided:  January 22, 2008

Filed:

                        _____
                               Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Town Pump's Dillon, Montana, service station location experienced a release from its petroleum underground storage tanks in December 2002. In December 2003 Town Pump applied to the Petroleum Tank Release Compensation Board (Board) for a determination of eligibility for reimbursement for its costs in conducting the cleanup of the diesel fuel at the spill site. Relying on the statutes and regulations in effect at the time of the release, the Board determined that Town Pump was not eligible for reimbursement. Town Pump proceeded to a contested case proceeding. An administrative hearings examiner affirmed the Board's determination and granted summary judgment for the Board. Town Pump filed an action in the First Judicial District Court challenging the administrative ruling. The District Court affirmed the Board. Town Pump appeals. We affirm.

## ISSUE

¶2    A restatement of the issue on appeal is:

¶3    Did the District Court err when it affirmed the Board's application of the version of the release reimbursement statute in effect at the time the release occurred, rather than the version of the statute in effect at the time reimbursement was sought?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    In July 2002 Town Pump applied to the Montana Department of Environmental Quality (DEQ) for a permit to replace the underground piping for its petroleum tanks at its service station in Dillon, Montana. The DEQ issued the requested permit and in November 2002 Town Pump Dillon was re-opened with new piping and release

2

detection. During the five day period from December 8–12, 2002, several sensors and alarms associated with the underground storage tank (UST) leak detection system for Town Pump Dillon were repeatedly triggered. Believing that the alarms were not indicative of an actual release of petroleum product from the tanks but rather were simply "bugs" that needed to be worked out of the new system, Town Pump did not immediately notify DEQ of any problems.

¶5 On December 10, a technician with the company that had installed the containment and alarm system at Town Pump Dillon stopped by just to check on the new system. The manager told him some of the alarms had been triggered. The technician investigated, bailed a small amount of fuel from one of the sumps and tightened a fitting. The record is not clear whether he returned to the store on December 11, but he did return on December 12 after the supervisor of Town Pump's Technical Assistance Group (TAG)[1] called and notified him that the sensors indicated a loss of approximately 1,000 gallons of fuel. The technician pumped several hundred gallons of fuel from the sumps during which time he detected and repaired a blown gasket that was causing the fuel leak. Town Pump TAG supervisor called DEQ at approximately 2 p.m. on December 12, reported the unusual operating condition including the alarms and sensors, and notified DEQ that Town Pump was in a potential release situation. On December 13, it was confirmed that Town Pump Dillon had experienced a release as that term is defined in

---

[1] TAG was responsible for all repairs and maintenance for Town Pump, including underground storage tank repairs.

§ 75-11-302(24), MCA (2001). The company subsequently undertook and completed a cleanup to the satisfaction of the relevant agencies.

¶6    In December 2003 Town Pump filed an application for reimbursement from the Petroleum Tank Release Fund (the Fund) as authorized by § 75-11-301-321, MCA. In January 2005 the Board denied Town Pump's application for eligibility for reimbursement on the ground that Town Pump had failed to notify DEQ within 24 hours of the release as required by the laws in effect at that time, i.e., § 75-11-308, MCA (2001) and Admin. R. M. 17.56.502 (1995). Town Pump appealed this initial Board ruling. In December 2005 the administrative hearing examiner issued its proposed order granting the Board's motion for summary judgment and finding Town Pump ineligible for reimbursement. In March 2006 the Board adopted the hearing examiner's proposed order and issued its final decision finding Town Pump ineligible for reimbursement from the Fund. In April 2006 Town Pump filed a Petition for Review of Order of the Petroleum Tank Release Compensation Board in the First Judicial District Court. In December 2006 the District Court issued its Decision and Order affirming the Board's ruling. Town Pump filed a timely appeal.

## STANDARD OF REVIEW

¶7    This case involves a legal conclusion only. The district court reviews the administrative agency's legal conclusion for correctness and we apply the same standard of review to the district court's determination. *Solid Waste Cont. v. Dep. of Pub. Ser. Reg.*, 2007 MT 154, ¶ 16, 338 Mont. 1, ¶ 16, 161 P.3d 837, ¶ 16.

## DISCUSSION

¶8     *Issue: Did the District Court err when it affirmed the Board's application of the version of the release reimbursement statute in effect at the time the release occurred, rather than the version of the statute in effect at the time reimbursement was sought?*

¶9     This case arose out of disagreement over which of the following statutes applies to Town Pump's request for reimbursement of cleanup costs. Town Pump maintains that the eligibility statute in effect at the time it filed its application for eligibility applies, while the Board determined that it was the statute in effect at the time Town Pump Dillon experienced its release which applies here.

¶10    The statute in effect at the time of the release, § 75-11-308, MCA (2001), provided, in relevant part:

> (1)  An owner or operator is eligible for reimbursement for the applicable percentage as provided in 75-11-307(4)(a) and (4)(b) of eligible costs caused by a release from a petroleum storage tank only if:
> (a)  the release was discovered on or after April 13, 1989;
> (b) the department is notified of the release in the manner and within the time provided by law or rule;
> . . .
> (e) with the exception of the release, the operation and management of the tank complied with applicable state and federal laws and rules that the board determines pertain to prevention and mitigation of petroleum releases when the release was discovered and remained in compliance following discovery of the release . . . .

The notification rule referred to in § 75-11-308(1)(b), MCA (2001), above, required notice to DEQ within 24 hours of the occurrence of "[u]nusual operating conditions," regulatory examples of which included "erratic behavior of product dispensing equipment" or "the sudden loss of product from the tank system." Admin. R. M. 17.56.502(2) (1995). The regulations also required an owner/operator to notify DEQ within 24 hours of "[m]onitoring results from a release detection method required under

5

[the regulations] that indicate a release may have occurred unless: [t]he monitoring device is found to be defective, and is immediately repaired, recalibrated or replaced, and additional monitoring does not confirm the initial result . . . ." Admin. R. M. 17.56.502(3)(a) (1995).

¶11 Following significant legislative changes in 2003, the statute in effect at the time Town Pump filed for eligibility, § 75-11-308, MCA (2003), provided, in relevant part:

> (1) An owner or operator is eligible for reimbursement for the applicable percentage as provided in 75-11-307(4)(a) and (4)(b) of eligible costs caused by a release from a petroleum storage tank only if:
> (a) the release was discovered on or after April 13, 1989, and the release occurred from:
> (i) an underground storage tank, as defined in 75-11-503, that was in compliance with 75-11-509 at the time that the release was discovered;
> (ii) a petroleum storage tank, as defined in 75-11-302, that was in compliance with the applicable state and federal laws and rules that the board determines pertain to the prevention and mitigation of a petroleum release from a petroleum storage tank at the time that the release was discovered; or
> (iii) an underground storage tank, as defined in 75-11-503, that the property owner had no previous knowledge of if the tank was in compliance with the applicable state and federal laws and rules that the board determines pertain to the prevention and mitigation of a petroleum release at the time that the release was discovered.

¶12 Town Pump posits three arguments to support its claim that it should have the benefit of retroactive application of the 2003 version of the statute: (1) the language of the amended statute expressly makes the amendments retroactive; (2) if the language in the amendment is *not* express, we should look to the intent of the Legislature and the act which demands the conclusion that it was intended to be retroactive; and (3) the amendments are remedial in nature and should be applied retroactively.

¶13 Town Pump does not argue that it notified DEQ of its release in accordance with the statutes and rules in effect at the time of the release. Moreover, it admits that it intentionally waited to seek reimbursement from the Fund until after the revised statute went into effect in October 2003, presumably to benefit from the revision which eliminated from the requirements for reimbursement eligibility the requirement that the UST owner/operator notify the DEQ of a release within 24 hours. Town Pump asserts the Legislature fully intended the amended version of § 75-11-308, MCA (2003), to be applied retroactively to any requests for reimbursement filed after the effective date of the amendments. Town Pump posits that the express language of subsection (1)(a) of the revised statute—"[a]n owner or operator is eligible for reimbursement for the applicable percentage as provided in 75-11-307(4)(a) and (4)(b) of eligible costs caused by a release from a petroleum storage tank only if: (a) the release was discovered on or after April 13, 1989"—supports its interpretation. It maintains that by the use of that phrase, the Legislature made it clear that the amended version of the statute was to be applied retroactively to all releases "discovered on or after April 13, 1989."

¶14 Alternatively, Town Pump argues that should the above-referenced language not qualify as an express legislative statement of retroactivity, this Court should employ our analysis from *State v. Hamilton*, 2007 MT 167, 338 Mont. 142, 164 P.3d 884, in which we looked at the legislative intent of the underlying statute to determine if an amendment should be applied retroactively. *Hamilton*, ¶ 10. Lastly, Town Pump asserts that the 2003 amendments to § 75-11-308, MCA, were remedial in nature and were intended to "strip the Board and DEQ of any power to add eligibility requirements to the Act";

7

therefore it should be applied to actions occurring prior to enactment. *Neel v. First Federal Sav. and Loan Asso*c., 207 Mont. 376, 675 P.2d 96 (1984).

¶15 The Board, citing § 75-11-308, MCA (1989-2005), counters that since the creation of the Fund, a consistent eligibility requirement in both the statutes and the regulations has been that the tank, and its operation and management, must be in compliance with applicable law "at the time the release occurred" or "was discovered." Both the 2001 and 2003 versions of this statute, quoted above, contain this requirement. Section 75-11-308(1)(e), MCA (2001), and § 75-11-308(1)(a)(ii), MCA (2003).

¶16 The Board also points out that the eligibility regulations codified in the UST chapter of the Administrative Rules of Montana (ARMs) in effect at the time of Town Pump's release expressly notified UST owners/operators that they must be in compliance with the release reporting requirements in order to be eligible for Fund reimbursement.

> Admin. R. M. 17.58.326(1)(c)(v) (2002) of the Petroleum Tank Release Compensation Board Rules informs owners/operators that the "applicable state rules" used by the Legislature in § 75-11-308, MCA, included Subchapter 5 of the UST ARMs, "Release Reporting, Investigation and Confirmation."

> Admin. R. M. 17.56.501 (1995) unequivocally informed UST owners and operators "seeking reimbursement from the Montana petroleum tank release cleanup fund" that they "must comply with the requirements of this subchapter."

> Admin. R. M. 17.56.502(2) and (3) (1995) imposed a 24-hour notification requirement for "unusual operating conditions" or "monitoring results from a release detection method . . . that indicate a release may have occurred . . . ."

¶17 Lastly, in support of its argument that the statutes and regulations buttress its determination of ineligibility, the Board points to § 75-11-309(1), MCA (2001) which

requires that an owner or operator seeking reimbursement for eligible costs must notify DEQ "immediately" when the owner/operator "discovers or is provided evidence that a release *may* have occurred . . . ." (Emphasis added.)

¶18 It is undisputed that the 2003 revisions (1) eliminated specific reference to the "24-hour release notification rule" found in the pre-2003 versions of the statute; (2) included an applicability clause and a savings clause; and (3) did *not* contain an express retroactivity clause. The applicability clause addressed amendments to § 75-11-307, MCA, exclusively; therefore, the Board determined that since § 75-11-307 was not at issue in Town Pump's claim, it was inapposite. The savings clause stated "[This act] does not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before [the effective date of this act]." The Board analyzed this language in the context of retroactivity and the absence of a retroactivity clause. Relying upon § 1-2-109, MCA (which states "No law contained in any of the statutes of Montana is retroactive unless expressly so declared."), the Board determined that the savings clause in the 2003 revisions "preserved the eligibility requirements in effect prior to October 1, 2003." In other words, eligibility for reimbursement from the Fund for corrective action costs incurred from an incident occurring prior to October 1, 2003, must be determined by the eligibility requirements in effect at the time of the release. Lastly, the Board concluded that the 2003 revisions were not remedial, and that they were substantive as opposed to procedural changes.

¶19 The District Court affirmed the Board's decision, holding that the savings clause clearly expressed the Legislature's intent to apply the statutes in effect at the time an

owner's and/or operator's duty arose. The court concluded that Town Pump's "duty" arose in December 2002 when the release detection system indicated a suspected release may have occurred. Town Pump failed to report these unusual operating conditions within the required 24-hour period mandated under the 2001 laws, and therefore the Board properly found Town Pump ineligible for reimbursement and the hearing examiner correctly granted summary judgment to the Board.

¶20 We reject Town Pump's argument that the language in the 2003 version "clearly [was] intended to apply retroactively." We note that in 2003, in addition to the statutory revisions at issue in this case, the Legislature revised several other provisions in Chapter 11 pertaining to USTs; in fact, it revised thirteen different sections in four parts of Chapter 11. Of these thirteen revisions, it expressly chose to make three revisions retroactive—§§ 75-11-202, 75-11-301, and 75-11-502, MCA. This is evidence that the Legislature clearly knows how to make amendments retroactive when it desires to do so, and also evidences a specific awareness of retroactivity language vis-à-vis revisions to Chapter 11 in particular.

¶21 We have repeatedly denied retroactive applicability of a revised law based on § 1-2-109, MCA, absent an express instruction from the Legislature. *In re D.B.*, 2004 MT 371, ¶ 37, 325 Mont. 13, ¶ 37, 103 P.3d 1026, ¶ 37, *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶ 12, 308 Mont. 29, ¶ 12, 38 P.3d 825, ¶ 12. *Accord Porter v. Galarneau*, 275 Mont. 174, 911 P.2d 1143 (1996), in which we clarified when we would give retroactive effect to changes in state statutes or judicial decisions. We concluded that under § 1-2-109, MCA, a "statute will not be given 'retroactive effect' unless the

10

legislature expressly declares the statute to be retroactive." *Porter*, 275 Mont. at 185, 911 P.2d at 1150. In the case before us, the Legislature did not expressly declare the statute to be retroactive; rather, it expressly stated in the savings clause that the statute did not apply to duties that matured before the effective date of the revised statute.

¶22 Having concluded that the Legislature expressed its intent that the amendments to § 75-11-308, MCA, not be retroactive, we need not address Town Pump's remaining arguments.

## CONCLUSION

¶23 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

11