DA 14-0454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 119

FILED

May 5 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0454

WHITEHALL WIND, LLC, a Montana
Limited Liability Corporation,

      Plaintiff and Appellee,

      v.

THE MONTANA PUBLIC SERVICE COMMISSION,
an Agency of the State of Montana,

      Defendant and Appellant,

      and

NORTHWESTERN ENERGY,

      Intervenor and Appellant.

APPEAL FROM:     District Court of the Fifth Judicial District,
                In and For the County of Jefferson, Cause No. DV 03-10080
                Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Justin W. Kraske, Montana Public Service Commission, Helena, Montana

            Sarah N. Norcott, NorthWestern Energy, Helena, Montana

      For Appellee:

            Michael J. Uda, Brown, Uda, Dinwiddie & Mazurek, PLLC, Bozeman, Montana

                       Submitted on Briefs: February 18, 2015
                                  Decided: May 5, 2015

Filed:

                               _____
                                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     The Montana Public Service Commission (the Commission) and NorthWestern Energy appeal a Fifth Judicial District Court decision reversing the Commission's determination that Whitehall Wind, LLC (Whitehall) did not incur a legally enforceable obligation during contract negotiations with NorthWestern for the sale and purchase of electric energy generated by a proposed wind facility.  On appeal, we address whether the District Court erred in reversing the Commission's determination that Whitehall had not established a legally enforceable obligation to deliver energy to NorthWestern.  We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     In 1978, Congress enacted Section 210 of the Public Utility Regulatory Policies Act (PURPA) to encourage cogeneration and small power production.  16 U.S.C. § 824a-3(a).  PURPA requires large electric utilities to purchase available energy from "qualifying cogeneration facilities and qualifying small power facilities."  16 U.S.C. § 824a-3(a).   Under Federal Energy Regulatory Commission (FERC) regulations, a "qualifying facility" may provide energy, capacity, or both to a utility pursuant to a contract or a "legally enforceable obligation."  18 C.F.R. § 292.304(d).  In 1981, the Montana Legislature enacted §§ 69-3-601 through -604, MCA, to facilitate the Commission's implementation of PURPA.   Section 69-3-603, MCA, requires the Commission to set rates and conditions "if a qualifying small power production facility and a utility are unable to mutually agree to a contract for the sale of electricity."

2

¶3     Whitehall is a qualifying facility.  NorthWestern is a public utility operating in Montana and subject to the Commission's jurisdiction.  In the summer of 2002, Whitehall contacted NorthWestern and attempted to negotiate a contract to sell energy from a proposed fifty-megawatt wind-generating facility near Whitehall, Montana.  In August 2002, after Whitehall and NorthWestern were unable to reach an agreement, Whitehall petitioned the Commission to set a long-term avoided cost rate[1] for electricity that Whitehall proposed to generate and sell to NorthWestern.  On January 2, 2003, after the parties conducted discovery and the Commission held a public hearing, the Commission issued an order setting a short-term rate of $0.010639 per kilowatt hour.  On January 31, Whitehall petitioned the District Court for judicial review of that order, seeking an order for the Commission to set a long-term contract rate.

¶4     On December 22, 2008, the District Court issued an order reversing and remanding the Commission's decision.  The court held that the Commission's rate unreasonably relied on stale data and directed the Commission to determine whether Whitehall had established a legally enforceable obligation.  The Commission and NorthWestern appealed the District Court's decision to this Court, and we affirmed. *Whitehall Wind, LLC v. Mont. PSC*, 2010 MT 2, 355 Mont. 15, 223 P.3d 907.

¶5     On June 4, 2010, the Commission issued an Order on Remand, concluding that Whitehall had not incurred a legally enforceable obligation.  The Commission determined

---

[1] The Commission defines "avoided costs" as "the incremental costs as determined by the commission to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source."  Admin. R. M. 38.5.1901(2)(a).

that "the touchstone of a legally enforceable obligation . . . is an absolute, unconditional commitment to deliver energy, capacity, or energy and capacity." Examining the totality of the circumstances, the Commission found that Whitehall failed to demonstrate an unconditional commitment. The Commission further concluded that Whitehall's attempted negotiations with NorthWestern merely constituted an effort to seek information to ascertain the viability of its proposed project.

¶6 Whitehall petitioned for judicial review of the Commission's order. On May 21, 2014, the District Court issued an order reversing and remanding the Commission's decision. The court determined that NorthWestern's refusal to negotiate created a legally enforceable obligation entitling Whitehall to a long-term avoided cost rate. The Commission and NorthWestern appeal.

## STANDARDS OF REVIEW

¶7 Section 2-4-704, MCA, governs the District Court's review of the Commission's decision. "The court may not substitute its judgment for that of the agency" in weighing factual evidence. Section 2-4-704(2), MCA. The court may reverse or modify an agency's decision if "substantial rights" of the appellant have been prejudiced because, among other factors, the agency's decision exceeds its statutory authority, is affected by legal error, or is clearly erroneous in light of the record. Sections 2-4-704(2)(a)(ii), (iv), and (v), MCA.

¶8 We apply the same standards of review that a district court applies, *Molnar v. Fox*, 2013 MT 132, ¶ 17, 370 Mont. 238, 301 P.3d 824, "and must accordingly determine whether an agency's findings of fact are clearly erroneous and whether its conclusions of

4

law were correct," *Mont. Solid Waste Contrs. v. Mont. Dep't of Pub. Serv. Regulation*, 2007 MT 154, ¶ 17, 338 Mont. 1, 161 P.3d 837. "A finding of fact is clearly erroneous if it is not supported by substantial evidence in the record, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves the court with a definite and firm conviction that a mistake has been made." *Williamson v. Mont. Pub. Serv. Comm'n*, 2012 MT 32, ¶ 25, 364 Mont. 128, 272 P.3d 71.

## DISCUSSION

¶9 Congress required FERC to prescribe "such rules as it determines necessary to encourage cogeneration and small power production" within one year of PURPA's enactment, and to revise those rules periodically. 16 U.S.C. § 824a-3(a). Section 210 of PURPA requires electric utilities to purchase electric energy from qualifying facilities. 16 U.S.C. § 824a-3(a). FERC interpreted this requirement to mean that a utility must purchase "*any* energy and capacity which is made available," either directly or indirectly, from a qualifying facility. 18 C.F.R. § 292.303(a) (emphasis added). FERC regulations provide that a qualifying facility has the option to sell energy as available or pursuant to a legally enforceable obligation. 18 C.F.R. § 292.304(d). If a qualifying facility sells its energy pursuant to a legally enforceable obligation, it may choose a rate based on the avoided costs calculated at the time of delivery or the avoided costs calculated at the time the obligation is incurred. 18 C.F.R. § 292.304(d)(2).

¶10 Though PURPA is a federal law, "[i]t is up to the States, not [FERC], to determine the specific parameters of individual [qualifying facility] power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law."

5

*Metro. Edison Co.*, 72 F.E.R.C. ¶ 61,015, ¶ 61,050 (1995). In its June 2010 order on remand, the Commission noted, "Determining the date at which [a legally enforceable obligation] is incurred requires determining what establishes [a legally enforceable obligation] under state law. This is a matter of first impression for the Commission." The Commission thoroughly considered each party's arguments, the language of the statutes, and relevant case law from other jurisdictions to conclude:

> [T]he touchstone of a legally enforceable obligation . . . is an absolute, unconditional commitment to deliver energy, capacity, or energy and capacity at a future date. Any commitment that is conditional fails to establish [a legally enforceable obligation].

Reviewing the record under this standard, the Commission determined that Whitehall had not incurred a legally enforceable obligation.

¶11   The Commission found support for its conclusion from other jurisdictions, many of which have determined that a qualifying facility establishes a legally enforceable obligation when it cannot abandon a project without incurring a liability. *See Rosebud Enters. v. Idaho Pub. Util. Comm'n*, 951 P.2d 521, 526 (Idaho 1997) (upholding a public utilities commission's determination that a qualifying facility did not establish a legally enforceable obligation by merely seeking information in order to assess the viability of a project); *A.W. Brown Co. v. Idaho Power Co.*, 828 P.2d 841, 843 (Idaho 1992) (citing a public utilities commission's determination that a legally enforceable obligation occurred once "the project was substantially mature to the extent that the developer was ready, willing, and able to sign a contract" and had "actively negotiated for a contract which, but for the reluctance of the utility, would have been executed"); *Appeal of Pub. Serv. Co.*,

539 A.2d 275, 280-81 (N.H. 1988) (upholding a public utilities commission's determination that a legally enforceable obligation was created by a timely and eligible rate petition, demonstrating that most developmental problems had been resolved and that the project was viable, accompanied by an interconnection agreement signed by a qualifying facility).

¶12    Relying on this precedent and statutory language, the Commission rejected Whitehall's argument that Whitehall incurred a legally enforceable obligation based on "its offer of a detailed long-term contract to [NorthWestern] in October 2002, its good faith attempt to negotiate that contract with [NorthWestern], and its ultimate petition to the Commission and the Commission's resultant decision."  In rejecting Whitehall's argument, the Commission determined that cases on which Whitehall relied did not actually support its position.  *See A.W. Brown*, 828 P.2d at 846-47 (upholding a commission's determination that "a qualifying facility is entitled to receive avoided cost rates if it obligates itself to the delivery of energy or capacity and if that obligation is legally enforceable," and that "preliminary, tentative, or general" discussions between a facility and a utility did not establish a legally enforceable obligation); *Armco Advanced Materials Corp. v. Pa. Pub. Util. Comm'n*, 579 A.2d 1337, 1347 (Pa. Commw. 1990) (determining that a qualifying facility incurs a legally enforceable obligation when it "has done everything within its power to create such an obligation, either by tendering a contract to the utility or by petitioning the [public utilities commission] to approve a contract or to compel a purchase," so that "only an act of acceptance by the utility or an act of approval by the [commission] remains to establish the existence of a 'contract.'").

7

The Commission determined that the courts in these jurisdictions required a qualifying facility to make a binding commitment before finding that the facility had incurred a legally enforceable obligation.

¶13 In its order, the Commission also announced a prospective bright-line rule: A facility seeking to establish a legally enforceable obligation must "tender an executed power purchase agreement to the utility with a price term consistent with the utility's avoided costs, with specified beginning and ending dates, and with sufficient guarantees to ensure performance during the term of the contract, and an executed interconnection agreement." The Commission explicitly declined to apply this bright-line rule retroactively. Instead, for its review of Whitehall's petition, the Commission examined the "totality of the circumstances to determine if the [qualifying facility] has made an unconditional commitment to deliver energy, capacity[,] or energy and capacity."

¶14 Several factual findings led the Commission to conclude that Whitehall had not incurred a legally enforceable obligation. The Commission relied on testimony by Whitehall employees indicating that Whitehall intended to use the rate set by the Commission to determine whether Whitehall feasibly could proceed with the project. The Commission found that, of the two contracts that Whitehall submitted to NorthWestern, one was unsigned and one was meant to stimulate negotiations rather than to present a firm commitment. Moreover, although Whitehall performed a wind analysis of the proposed site, it had not conducted avian studies or obtained any actual site control. Ultimately, the Commission concluded, "Taken as a whole, the record establishes that [Whitehall] was merely seeking information from which it could make a

8

decision whether or not to proceed. This falls short of establishing [a legally enforceable obligation]."

¶15 The District Court reversed the Commission's decision, determining that the Commission "ignored the facts and exceeded its statutory authority," and that its decision was "clearly erroneous." The court determined that "[s]imply refusing to negotiate" can create a legally enforceable obligation. In reaching this determination, the court relied on FERC's declaratory orders in *Hydrodynamics, Inc.*, 146 F.E.R.C. ¶ 61,193 (2014) (concluding that Montana's requirement that qualifying facilities must participate in competitive solicitation to obtain long-term rates for contracts with utilities violated PURPA); *Grouse Creek Wind Park, LLC*, 142 F.E.R.C. ¶ 61,187 (2013) (concluding that an Idaho Public Utilities Commission rule and order were inconsistent with PURPA where, as a prerequisite to obtaining a legally enforceable obligation, the rule required a qualifying facility and a utility to sign a purchase and sale agreement or, alternatively, the order required a qualifying facility to complain "meritoriously" to the commission); *Cedar Creek Wind, LLC*, 137 F.E.R.C. ¶ 61,006 (2011) (addressing similar issues as *Grouse Creek* and reaching the same conclusion); and *JD Wind 1, LLC*, 129 F.E.R.C. ¶ 61,148 (2009) (concluding that a Texas law specifying that legally enforceable obligations were available only to sellers of "firm power" was inconsistent with PURPA).

¶16 Each of the FERC orders on which the District Court relied addresses issues different from the issue in this case.[2] In contrast to *Hydrodynamics*, this case concerns

---

[2] Because we do not find the FERC rulings dispositive, we do not discuss the parties' contentions regarding their use as precedent.

the standard for establishing a legally enforceable obligation when there is no contract, and it does not involve a competitive solicitation requirement. In contrast to *Grouse Creek* and *Cedar Creek*, the Commission in this case did not require a signed contract or a formal commission ruling for Whitehall to receive long-term avoided-cost rates. Unlike *JD Wind*, the Commission did not reject Whitehall's petition on the ground that it would offer power from intermittent resources rather than firm power. Moreover, in *JD Wind*, the facility clearly had made a binding commitment because it already was delivering wind energy to the utility when the facility sued to enforce the legally enforceable obligation. *JD Wind*, ¶ 61,633. By contrast, Whitehall has not begun to build the infrastructure it would need to deliver energy to NorthWestern and has not even acquired property rights to the proposed site.

¶17 The Commission did not exceed its statutory authority in concluding that evidence of a utility's refusal to negotiate, without more, is insufficient to establish that a qualifying facility has committed itself to the proposed project. This conclusion is not affected by an error of law—it is supported by statutory language and by judicial decisions in other jurisdictions. Further, the Commission's ruling in this case was fact-specific. There is substantial evidence in the record to support the Commission's finding that Whitehall had not committed itself to the project or established any obligation that could expose it to liability if Whitehall abandoned the proposed project. Although Whitehall conducted some wind tests in the area of the proposed project, it did not conduct avian studies, obtain required permits, or have actual site control over any of the proposed project areas. In essence, Whitehall sought to have the Commission

10

establish a long-term avoided cost rate in order to determine the financial viability of the project before it incurred an obligation to proceed. But, under applicable FERC regulations, the long-term rate is tied to the date a legally enforceable obligation is incurred. Evidence in the record supports the Commission's determination that Whitehall, while pursuing information, had not obligated itself to NorthWestern and therefore had not established a legally enforceable obligation to deliver energy or capacity. Accordingly, the Commission's findings of fact were not clearly erroneous. Whitehall has failed to demonstrate that its substantial rights were prejudiced for any of the reasons listed in § 2-4-704(2)(a), MCA.

¶18 Because it is not implicated in this appeal, we decline to opine whether the Commission's bright-line prospective test, announced in its order, complies with PURPA. Additionally, because we reverse the District Court's decision, we need not address the appellants' argument that the District Court's reliance on *Hydrodynamics*, without allowing the appellants to rebut Whitehall's characterization of that case, violated their procedural due process rights.

## CONCLUSION

¶19 We reverse the District Court's decision and order and remand for reinstatement of the Commission's June 4, 2010 order.

/S/ BETH BAKER

11

We concur:

/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE