No. 81-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

HARLAND J. SINK and
RUTH E. SINK,

           Plaintiffs and Appellants,

vs.

SCHOOL DISTRICT NO. 6, CASCADE
COUNTY and its BOARD OF TRUSTEES,

           Defendants and Respondents.

---

Appeal from: District Court of the Eighth Judicial District,
           In and for the County of Cascade
           Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Plaintiffs:

        Joseph W. Duffy, Great Falls, Montana

    For Defendants:

        J. Fred Bourdeau, County Attorney, Great Falls, Montana

---

Submitted on briefs: April 1, 1982

Decided: August 11, 1982

Filed: AUG 11 1982

_Thomas J. Kearney_
_____
                  Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This appeal results from a judgment entered by the Eighth Judicial District Court, Cascade County, wherein appellants were awarded wages due based upon respondents' violation of Montana's minimum wage and hour statutes, previously found in sections 41-2301 through 41-2307, R.C.M. 1947. The same judgment denied appellants' attorney's fees and a penalty.

Three issues are presented on appeal:

(1) Whether the District Court erred in calculating wages due and owing to appellants?

(2) Whether the District Court erred in denying statutory penalties and attorney's fees to appellants on their wage claim?

(3) Whether the District Court erred in holding appellants' claim for statutory penalties was barred by the statute of limitations?

Appellants were employed at the Fort Shaw School from July 1971, to June 15, 1974, pursuant to written contracts. During each of the years involved, Harland Sink was hired to perform custodial and maintenance duties under one contract and to drive a school bus under another contract. Ruth Sink was employed to assist Harland Sink in his duties, under the terms of a written addendum to his custodial contract. Neither of the appellants was employed for a specific number of hours; rather they were to devote such time as was necessary to complete the work. While the time devoted could fluctuate from week to week, the Sinks were paid their fixed salary according to the contract then in effect.

Appellants' employment with the School District was terminated in the summer of 1974. That July, Harland Sink

filed a complaint with the Montana Department of Labor alleging that he had not been properly paid for regular and overtime hours worked while he was employed by the School District. Subsequently, the Montana Department of Labor transferred investigation of the case to the Employment Standards Division of the United States Department of Labor. An investigation of appellants' complaint ensued. On March 19, 1975, Harland and Ruth Sink received a letter detailing the results of the United States Department of Labor investigation. The Department of Labor's determination was that for the period May 31, 1974 to October 16, 1974, wages in the amounts of $1,484.00 and $1,161.00 were due to Harland Sink and Ruth Sink, respectively. The Department of Labor unsuccessfully sought voluntary payment of back wages from the School District but did not undertake court action on behalf of appellants. The Department of Labor recommended that they file their own legal action.

Appellants instituted suit in February of 1976. Their original claims were based upon the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b), and the Montana Wage Payment Act (WPA) and Minimum Wage and Overtime Compensation Act (MWOCA), Title 41, Chapters 13 and 23, R.C.M. 1947. The District Court subsequently dismissed the Fair Labor Standards Act claim on the basis of National League of Cities v. Usery (1976), 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245. The parties completed discovery and proceeded to trial on the claims arising under Montana law.

The matter was tried by the court without a jury. Appellants testified, as did two witnesses for respondents, regarding employee obligations, duties, and amount of time required to complete the work involved. The court received

final briefs and proposed findings of fact and conclusions of law subsequent to the trial.

In its findings of fact, conclusions of law and judgment, the trial court found that Ruth Sink performed custodial work at the Fort Shaw School an average of 13 hours per workweek over the 1971 to 1974 period, for a total of 1,755 hours. The court determined wages due Ruth Sink by multiplying her hours by the appropriate minimum wage and subtracting wages paid to her.

The District Court found that Harland Sink worked approximately 45 hours per week during the three year period of his employment, five hours of which were overtime for which he was not compensated at overtime rates. Because Harland Sink received a fixed monthly payment, the District Court had to calculate his weekly wages and his regular hourly wage before it could compute the total overtime wages due him.

The District Court found that Ruth Sink was entitled to $1,871.40 and that Harland Sink was entitled to $1,030.90 under Montana's MWOCA. The District Court concluded that appellants were not, however, entitled to statutory penalties and attorney's fees under the WPA as it was incorporated into the minimum wage and overtime compensation statutes.

CALCULATION OF WAGES DUE

Appellants contend the District Court erred in computing the amount of wages due them under the MWOCA. The errors alleged concern the trial lower court's treatment of wages received by Ruth Sink. Appellants assert that from 1971 through 1974 Ruth Sink's wages were deducted from Harland Sink's wages and that therefore she actually was not paid for her work and Harland Sink's hourly wage rate was underestimated

-4-

by an amount equal to Ruth Sink's wages divided by the number of hours Harland Sink worked. Respondents maintain that, although an addendum to a 1971 contract between the parties stated that Ruth Sink's wages were to be deducted from Harland Sink's wages, the evidence on the whole did not show that that in fact happened.

The evidence is undisputed that the School District contracted to pay Ruth Sink a sum of $485.60 for the services she rendered from 1971 through 1974. The evidence is also undisputed that an addendum to a 1971 contract between Harland Sink and the School District indicated Ruth Sink's wages were to be deducted from Harland Sink's salary. The evidence conflicts as to whether the 1972-73 and 1973-74 contracts included similar provisions.

Nevertheless, the District Court properly recognized, in calculating wages due Ruth Sink, that the contract provision providing for her wages to be offset was not adhered to and she was in fact paid in addition to her husband.

The trial court found that Ruth Sink was paid $485.60 over the course of her employment. The trial court committed no error in incorporating this finding into its calculation of wages currently due Ruth Sink.

Likewise the trial court's calculations regarding the amount due Harland Sink are proper. The court did not find that Ruth Sink's salary had been deducted from the amount Harland Sink was to receive under his contract. In fact Harland Sink's answers to respondents' interrogatories show that the actual total wages received by Harland Sink were:

| | 1971 (6 months) | $2,591.22 |
| | 1972 | $5,858.10 |
| | 1973 | $6,738.56 |
| | 1974 (6 months) | $3,369.24 |
| | Total Amount | $18,557.42 |

Defendants' answers to plaintiffs' interrogatories show that the parties contracted the following amounts for Harland Sink's custodial and bus driving services:

| | CUSTODIAL | DRIVING | TOTAL |
|---|---|---|---|
| 1971-72 | $3,383.04 | $2,025.00 | $5,408.04 |
| 1972-73 | $3,569.16 | $2,848.50 | $6,417.66 |
| 1973-74 | $3,747.60 | $2,990.96 | $6,738.56 |
| | | Total Amount | $18,564.26 |

While it is not apparent what accounts for the $6.84 discrepancy between the three year totals, the evidence clearly shows that there is not a $485.60 deficiency between the amount Harland Sink received as wages and the amount he was obliged to receive under contract with the School District. Finding no evidentiary basis for appellants' allegation the trial court's findings and calculations will not be disturbed on appeal.

STATUTORY PENALTIES AND ATTORNEY FEES

Plaintiffs' claims arise under the MWOCA as enacted by the legislature in 1971. Chapter 417, Laws of Montana (1971), codified as sections 41-2301, et seq., R.C.M. 1947. Section 6 of that enactment (codified as section 41-2306, R.C.M. 1947) provides that "[e]nforcement of this act shall be treated as a wage claim action and shall be in accordance with sections 41-1301 through 41-1324, R.C.M. 1947." The statutes referred to in section 6 comprised the WPA, formerly found at sections 41-1301, et seq., R.C.M. 1947. At the time of enactment the WPA provided in part:

"41-1301. Semimonthly payment of wages.

". . .

"(3) The following are the definitions used for the purpose of this act:

". . .

"(b) 'Employer' includes any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons, acting directly or indirectly in the interest of an employer in relation to an employee, but shall not include the United States, the state of Montana or any legal subdivision thereof." (Emphasis added.)

"41-1302. Penalty for failure to pay at times specified in law. Whenever any employer, as such employer is defined in this act, fails to pay any of his employees, as provided in the preceding section, he shall be guilty of a misdemeanor. A penalty shall also attach to such employer and become due such employee as follows: A sum equivalent to a penalty of five (5%) per cent of the wages due and not paid, as herein provided, as liquidated damages, and such penalty shall attach and suit may be brought in any court of competent jurisdiction to recover the same and the wages due." (Emphasis added.)

"41-1306. Judgment for wages shall include attorney's fee. Whenever it shall become necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due, as provided for by this act, then such judgment shall include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in this case." (Emphasis added.)

We must determine what the legislature intended when it provided that "enforcement of [MWOCA]. . . shall be pursued in accordance with [WPA] as amended."

Appellants ask the Court to harmonize the two acts by limiting the exclusions provided under the WPA to enforcement of that act. Appellants maintain that the term "employer" as used in the MWOCA is exclusive of the WPA definition of "employer," that under the MWOCA the term "employer" is all-encompassing and therefore inclusive of respondents, and

-7-

that the phrase "enforcement . . . in accordance with" means only that the same procedure and relief be afforded MWOCA-covered employees as WPA-covered employees.

Respondents support the trial court's decision, arguing that Bitney v. School District No. 44 (1975), 167 Mont. 129, 535 P.2d 1273, controls this question. In Bitney, this Court held that school districts, expressly excluded from the WPA definition of "employer," were not liable for attorney's fees in a wage claim action. Additionally, respondents do not read section 41-2306, R.C.M. 1947, to require that the WPA procedures and relief be available to all MWOCA-covered employees. They interpret the phrase "in accordance with" to mean that if an employer is not liable under the terms of the WPA, the employer cannot be liable for attorney's fees or statutory penalties under WPA-based enforcement of the MWOCA.

The role of the courts in construing and applying statutes is narrowly prescribed: we must simply "ascertain and declare what is in terms or in substance contained [in statutes], and not to insert what has been omitted or omit what has been inserted." Section 1-2-101, MCA. If possible, legislative intent must be inferred from the plain meaning of the words contained in statutes; only if there exists ambiguity in such wording should the court resort to the rules of statutory construction. Haker v. Southwestern Ry. Co. (1978), 176 Mont. 364, 578 P.2d 317.

Black's Law Dictionary 474 (5th ed. 1979) defines "enforcement" as "the act of putting something such as law into effect; the execution of a law, the carrying out of a mandate or a command." "Accordance" is defined as "agreement;

-8-

harmony; concord; conformity." Black's Law Dictionary 16 (5th ed. 1979).

The plain meaning of the statutory language at issue indicates that the legislature intended that the mode of redress under the MWOCA comply with the remedial process established under the WPA. In adopting MWOCA, it is apparent that the legislature did not find it necessary to separately set forth the means by which an employee could effect his or her newly acquired rights; instead the execution framework of an existing law was engrafted onto the new law by means of incorporation. That framework specifies the process by which a wage claim may be prosecuted and the remedies afforded an employee if prosecution is successful. Successful enforcement garners not only the wages to which the employee was entitled under the substantive portions of the act but the additional relief of attorney's fees and a penalty equal to five per cent of the wages due.

We do not construe section 41-2306, R.C.M. 1947, to mean that substantive limitations of the WPA also be incorporated into the MWOCA. This Court is not required to incorporate the omitted definition in order to make enforcement under MWOCA accord with the WPA. Substantive provisions of the MWOCA refer to "every employer" or "no employer." (See section 41-2303, R.C.M. 1947.) Neither of these references indicate that the legislature in any way intended to carve from this all-encompassing language a subset of employers who would be immune from prosecution under the WPA.

Our discussion today is not at odds with Bitney v. School District No. 44, supra. Bitney has no application here as it involved interpretation and enforcement of a contract between an employee and employer. Furthermore,

-9-

Bitney was not premised upon the MWOCA.

This Court need not, as appellants have argued, repeal by implication that portion of the WPA definition of employer which excludes political subdivisions of the State. A repeal by implication is appropriate only when there is an irreconcilable conflict between two statutes. Dolan v. School District No. 10 (1981), ____ Mont. ____, 636 P.2d 825, 38 St.Rep. 1903. That is not the case here. By limiting application of the definition of "employer" under the WPA to enforcement of that act we have avoided such a conflict and maintained the integrity of both acts. We hold the appellants are eligible for penalties and attorney's fees under the MWOCA.

STATUTE OF LIMITATIONS

The issue regarding application of section 41-1304, R.C.M. 1947, is not properly before the Court. The District Court did not rule that plaintiffs' claim for statutory penalties was barred by the statute of limitations. The District Court's discussion of the statute of limitations was entirely gratuitous. This Court does not issue advisory opinions.

The District Court's decision is affirmed in part and reversed in part. The case is remanded for consideration of attorney's fees and the appropriate penalty.

_____
Justice

-10-

We Concur:

_____
Chief Justice

_____

_____

_____
Justices