

DA 06-0819

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 271

DAVID L. CLOUSE, LYNN B. MICHEL, JACK B.
SHAMLEY, MICHAEL H. MCFERRIN, JOHN A.
LAMB, VIRGIL A. WOLFE, TIMOTHY A. ZARSKE,
WAYDE A. COOPERIDER, STEVEN J. ADSEM, ALAN R.
HUGHES, KENNETH L. GETZ, KELLY W. BLIXT,
BRETT L. FRIEDE, RICHARD D. BROADWATER,
DENNIS E. NYLAND, JOANI L. TOMPKINS, CORY W.
OLSON, RAYMOND L. POTTER, CHRISTOPHER T.
CORNISH, DAVID J. FRADETTE, DIRK ANDERSON,
SCOTT E. LINDGREN, PHILLIP J. CLARK, JASON T.
GRIMMIS, MICHAEL J. MCCARTHY, DANIEL F.
O'MALLEY, KEVIN H. WRIGHT, SHANE M. HILDENSTAB,
VANCE E. LAVINDER, SAM A. MAHLUM, BRIAN R.
ROBINSON, GARY L. WEISNER, DAVID L. PETERSON,
WILLIAM A. KUSSMAN, LISA K. HOWE, LARRY PLATTS,
URIAH S. WOOD, and GREGORY S. TODD,

   Plaintiffs and Appellees,

 v.

LEWIS AND CLARK COUNTY,

   Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
      In and For the County of Lewis and Clark, Cause No. ADV 2005-769
      Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      K. Paul Stahl and Tara A. Harris, Deputy County Attorneys, Helena, Montana

   For Appellees:

Stephen C. Bullock, Bullock Law Firm, Helena, Montana

For Amicus Curiae:

James P. Reynolds, Reynolds, Motl & Sherwood, Helena, Montana
(for Montana Sheriff's and Peace Officers Association)

Submitted on Briefs:  January 16, 2008

Decided:  August 5, 2008

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Lewis and Clark County (County) appeals from the District Court's decision in favor of a group of former and current Lewis and Clark County sheriff's deputies (Deputies) who filed wage and hour claims. We affirm, in part, and, reverse and remand, in part.

¶2     The County's appeal presents the following issues:

¶3     1. Did the District Court properly exercise subject matter jurisdiction over the County's petition for judicial review?

¶4     2. Did the District Court properly use a rank based minimum salary in calculating the Deputies' longevity pay rather than the department's minimum salary?

¶5     3. Did the District Court correctly determine that the calculation of the deputy sheriffs' longevity pay includes the $2,000 supplement to the sheriffs' "base annual salary," found at § 7-4-2503(2)(b), MCA (2003)?

¶6     4. Did the District Court properly conclude that the County's "repeated violations" entitled the Deputies to recover back wages and penalties over a three-year period under § 39-3-207(3), MCA?

¶7     5. Did the District Court correctly increase the amount of the penalty owed by the County to the Deputies from fifty-five percent to 110 percent of wages owed?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     The Deputies filed petitions to recover wages, under § 39-3-207, MCA, with the Wage and Hour Unit (WHU) of the State of Montana's Department of Labor and Industry (Department). The Deputies alleged primarily that the County improperly had calculated the

3

Deputies' salaries and longevity pay during the period between July 2001 and March 2004. The Department's hearing officer concluded that the County had failed to calculate salary and longevity pay properly, that the County had engaged in "repeated violations," and that the County owed the Deputies a penalty of fifty-five percent of the wages due in addition to the withheld salary and longevity pay.

¶9      The Deputies filed a petition for judicial review of the penalty and the hearing officer's longevity calculation. The County filed a cross-petition for review of the penalty, the "repeated violations" determination, and the longevity calculation. Neither party appealed the hearing officer's determination of the proper calculation of the Deputies' salaries. The District Court ruled in favor of the Deputies on all issues. The County appeals.

*Background of Sheriff and Deputy Sheriff Salary Calculations*

¶10      The sheriff has the authority to adjust the deputy sheriffs' compensation within a particular county according to a rank structure in that county. Section 7-4-2508(2)(b), MCA. The following percentages associate with each rank in Lewis and Clark County:

| | |
|---|---|
| Investigator/Captain | 90 percent |
| Lieutenant/Probationary Investigator | 88 percent |
| Sergeant | 86 percent |
| Patrolman I | 82 percent |
| Patrolman II | 78 percent |
| Patrolman III | 76 percent |
| Patrolman Probationary | 74 percent |

Generally, a sheriff is paid a base salary set by the county governing board, the statutory $2,000 salary supplement contained in § 7-4-2503(2)(b), MCA, longevity pay, and overtime compensation. The deputy sheriff is paid a rank based percentage of the combined sheriff's

4

base salary and $2,000 supplement, plus longevity and overtime.

¶11 For many years, the Sheriff's Office of Lewis and Clark County and the Lewis and Clark County Sheriff Employee's Association (Association) had negotiated the longevity calculation as part of their collective bargaining agreement (Agreement). The Agreement covering the time between July 1, 2003, and June 30, 2005, provides the relevant guidelines and expectations for hourly and longevity pay of most of the sheriff's deputies.

¶12 The County previously included the sheriff's $2,000 statutory salary supplement in the calculation of deputies' *salaries* from July 1, 1998 to June 30, 2001. After June 30, 2001, however, the $2,000 supplement disappeared from the calculation of the deputies' salaries. This omission by the County prompted some deputies to file for back wages and the corresponding difference in longevity pay for the period from July 1, 2001, to June 30, 2004. The County modified the deputies' salaries for the period from July 1, 2004, through June 30, 2005, to include the sheriff's $2,000 supplement.

¶13 When the County modified the salaries to make up for the omission, it also revised the deputy longevity calculation. The County's Human Resources Department sent a memo to each claimant, announcing that it had changed its method of calculating deputy longevity and that it intended to apply the new method retroactively. The County previously had calculated deputy longevity using the minimum base annual salary correlating with the deputy's rank, but had *not* included the appropriate percentage of the sheriff's $2,000 salary supplement in the deputy's salary when calculating longevity. The County changed the deputy's longevity pay from being rank based to non-rank based.

5

¶14    The County began calculating longevity by taking one percent of the lowest minimum base annual salary allowed under the statute (seventy-four percent) for each year in the department. This revision gave all deputies the probationary patrolman's rank (seventy-four percent of sheriff's salary) for purposes of computing the "minimum base annual salary." The County also maintained that the sheriff's $2,000 salary supplement should not be included in the calculation of the deputies' salary for purposes of calculating longevity.

*Administrative Proceedings*

¶15    The first claimants, David Clouse and Lynn Michel, filed with the WHU on February 25, 2004, claims for wages and longevity pay improperly withheld by the County. Clouse and Michel claimed to have earned the pay between July 1, 2001, and the dates of their respective retirements in 2003. Several other deputies filed claims between March and June 2004.

¶16    The WHU Compliance Specialist issued its Determination of several of the deputies' claims on June 23, 2004. The Compliance Specialist determined that the County owed the Deputies additional wages and longevity pay withheld for the two years before the County had notice of the claims. The Compliance Specialist also imposed the statutory penalty of fifty-five percent on the County, to be reduced to fifteen percent if the County paid the entire amount within the time specified by law.

¶17    The Compliance Specialist rejected the County's view that Montana law requires that deputy longevity be calculated using only the minimum base annual salary in the sheriff's department, rather than the minimum base annual salary within the deputy's rank.

6

The Compliance Specialist also disagreed with the County's assertion that the prior practice of paying the deputies' longevity according to rank had been a mistake. The Compliance Specialist noted that the law has established a required minimum amount, but recognized that "the law does not prohibit the County and the union from bargaining for a higher amount, which is what has been done for several years." The Compliance Specialist further took issue with the lack of support for the County's position that it could "retroactively take credit on this longevity pay they contend was an overpayment and offset it against wages now found due."

¶18     The Compliance Specialist ultimately transferred for final resolution the 38 pending claims from the WHU to the Department's Hearings Bureau. The hearing officer held a scheduling conference on March 16, 2005. The hearing officer also ordered the County to provide two individual claimants, Lamb and Bourassa, certain information by March 31, 2005, necessary to calculate the wages to which they would be entitled. Deputy Lamb requested a default against the County on April 21, 2005, after the County had failed to provide the requested information. The County did not respond to Lamb's request for default or provide the information ordered before the hearing. The hearing officer denied the motion for default, but ordered the County to produce all relevant records at the hearing on May 19, 2005. The hearing officer established sanctions to be imposed for any failure by the County to produce records.

¶19     The hearing officer issued a Final Agency Decision on October 3, 2005. The hearing officer determined that (1) the appropriate longevity formula should be one percent of the

deputy sheriff's salary, including the $2,000 salary supplement, for every year of service that the deputy was with the department; (2) deputy sheriffs' salaries should be based on the entry-level percentage (seventy-four percent in Lewis and Clark County) for purposes of calculating longevity, rather than the percentage set by the individual deputy's rank as determined by the sheriff under § 7-4-2508, MCA; (3) the County had engaged in repeated violations, "with respect to the number of deputies who were improperly paid, with respect to the number of successive pay periods over several years, and with respect to the failure to properly calculate wages even when the County adjusted the pay;" and (4) the County owed the Deputies a penalty of fifty-five percent of the wages due.

¶20 The hearing officer's determination that the County had engaged in repeated violations triggered the County's liability for underpaid wages going back three years before the claims had been filed. The hearing officer further determined that the County should have adjusted for its mistake going back to July 1, 2001, the date when the County began calculating longevity without considering the $2,000 supplement to the sheriff's base salary.

## District Court Proceedings

¶21 The Deputies filed a petition for judicial review of the Agency's determination regarding the longevity calculation. The County filed a cross-petition for judicial review on November 7, 2005. The Deputies moved to dismiss the County's cross-petition for failing to file the petition within the 30 days required by statute. The District Court initially granted

8

the motion to dismiss the petition, but later issued an order amending the prior ruling to allow the County's petition to proceed.

¶22 The District Court agreed with the hearing officer that the calculation of deputies' longevity pay should have included the $2,000 statutory supplement to the sheriff's base salary. The court disagreed with the hearing officer's determination, however, that § 7-4-2508, MCA, required the County to use the entry level percentage to calculate the Deputies' longevity pay. The court held that the hearing officer correctly had interpreted the phrase "repeated violations" found in § 39-3-207, MCA, to mean "more than once," and correctly determined that the County had engaged in "repeated violations," that supported recovery for wages withheld within three years before the claim. Finally, the District Court concluded that the County should have been ordered to pay the Deputies a penalty of 110 percent, rather than fifty-five percent, due to the existence of special circumstances that warranted the higher penalty, pursuant to Admin. R. M. 24.16.7556 (2003). The County appeals.

## STANDARD OF REVIEW

¶23 This case arises from an appeal of an administrative agency's determination that the County owed the Deputies three years of backpay and penalties. We review the District Court's conclusion of law that it had subject matter jurisdiction to determine if its interpretation of law is correct. *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 7, 300 Mont. 16, ¶ 7, 3 P.3d 603, ¶ 7. "A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law." *Ostergren v. Department of Revenue*, 2004 MT 30, ¶ 11, 319

Mont. 405, ¶ 11, 85 P.3d 738, ¶ 11. We employ "the same standards when reviewing a district court's order affirming an administrative decision." *Ray v. Montana Tech of the Univer. of Montana*, 2007 MT 21, ¶ 24, 335 Mont. 367, ¶ 24, 152 P.3d 122, ¶ 24 (citing *Ostergren*). We review de novo the District Court's legal interpretations. *Pickens*, ¶ 7.

## DISCUSSION

¶24 *Did the District Court properly exercise jurisdiction over the County's petition for judicial review?*

¶25 Before we address the threshold question of whether the District Court properly exercised jurisdiction over the County's petition for judicial review, we must consider whether this argument is properly before this Court. The Deputies challenge the court's decision on a motion for reconsideration that it possessed subject matter jurisdiction over the County's petition for judicial review. The Deputies did not file an appeal or cross-appeal on this issue. The Deputies instead raise this challenge in their response brief.

¶26 In defense of this action, they cite M. R. App. P. 2(a) (2005), which provides that

> [u]pon appeal from a judgment in a civil case, the court may review the verdict or decision, and any intermediate order or decision excepted or objected to within the meaning of Rule 46 of the Montana Rules of Civil Procedure, which involves the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken.

The Deputies characterize the court's order on reconsideration regarding subject matter jurisdiction as an "intermediate order" involving the merits or necessarily affecting the judgment. The Deputies argue that upon final judgment, all nonappealable intermediate orders or decisions, to which there has been a proper objection, are reviewable on appeal

10

from the final judgment, citing *Ruana v. Grigonis*, 275 Mont. 441, 452, 913 P.2d 1247, 1254 (1996).

¶27	The Deputies properly raised their objection to the court's jurisdiction in the District Court. Montana Rules of Appellate Procedure 4(c) and 5(a)(3) (2005) provide, however, that the party raising an issue with an intermediate order or a final judgment must file a notice of appeal or cross-appeal. *See Colmore v. Uninsured Employer's Fund*, 2005 MT 239, ¶ 39, 328 Mont. 441, ¶ 39, 121 P.3d 1007, ¶ 39. Montana Rule of Appellate Procedure 2(a) (2005) provides that, upon proper *appeal*, then and only then, may this Court review an intermediate order. The Deputies failed properly to appeal or cross-appeal the court's determination of jurisdiction upon the County's motion for reconsideration. This failure precludes the Court from reaching the merits of the Deputy's subject matter jurisdiction argument on the County's appeal.

¶28	*Did the District Court properly use a rank based minimum salary in calculating the Deputies' longevity pay rather than the department's minimum salary?*

¶29	The County, like dozens of counties across Montana, negotiated its method of calculating longevity with the Association as part of the Agreement. Section 7-4-2510, MCA, leaves open to negotiation the meaning of "minimum base annual salary." From 1991 to 2004, the deputies received one percent of their rank's *base salary* as longevity. The County unilaterally changed the method of calculation for sheriff's deputies' longevity in February 2004. As a result, all deputies received one percent of the salary of an entry level

11

probationary patrolman in Lewis and Clark County. We address here only whether some provisions of § 7-4-2510, MCA, required the County to undertake the unilateral change in how it calculated longevity.

¶30 The County amended the minimum base annual salary to reflect the lowest possible compensation percentage allowed under § 7-4-2508(2)(a), MCA, rather than to reflect each deputy's assigned rank within the department's rank structure. The Deputies suggest that, through this unilateral change after over twelve years of using the rank based method, the County sought to offset some back wages that it owed deputies for other reasons. The County defends this revision as reflecting the correct interpretation of § 7-4-2510, MCA.

¶31 The legislature approved a longevity provision in 1981 to aid in the retention of experienced deputies in the sheriff's department:

> **Sheriff's department -- longevity payments.** Beginning on the date of his first anniversary of employment with the department and adjusted annually, a deputy sheriff or undersheriff is entitled to receive a longevity payment amounting to 1 % of the minimum base annual salary for each year of service with the department, but years of service during any year in which the salary was set at the same level as the salary of the prior fiscal year may not be included in any calculation of longevity increases. This payment shall be made in equal monthly installments.

Section 7-4-2510, MCA. If the legislature had intended to restrict the "minimum base annual salary" to the lowest percentage provided in the salary schedule, it could have made that intent explicit through an internal reference to the lowest applicable percentage found at § 7-4-2508(2)(a), MCA. The absence of this internal reference leads the Court to believe that the Legislature intended to allow counties to continue the practice of negotiating the

assignment of base salaries and calculation of longevity based on rank as part of the collective bargaining process.

¶32 The County's decision to change unilaterally the percentage to seventy-four percent lowered the longevity pay for all deputies who were ranked above probationary patrolman. This change worked specifically against captains and lieutenants. This reduction and the County's rigid interpretation of "minimum base annual salary" defeats the purpose of longevity pay – to retain more experienced employees through an extra financial incentive.

¶33 To base the longevity calculation on seventy-four percent as the minimum base annual salary would result in the number of years that a deputy remains with the County constituting the only factor increasing longevity pay. To apply this seventy-four percent forward also would result in a promoted deputy seeing no increase in longevity arising from that promotion. This interpretation would defeat any incentive within the longevity pay program for a deputy to be promoted or to improve at the job.

¶34 The County suggests that it relied on attorney general opinions that concluded that the smallest percentage allowed in a county would determine the minimum base annual salary. 39 Mont. Op. No. 82 Atty. Gen. (June 22, 1981). The County relies exclusively on a lone 1981 opinion that the "minimum base annual salary" for calculating longevity payments is the statutory minimum level for the county involved. 39 Mont. Op. No. 82 Atty. Gen. at 2.

¶35 The attorney general opinion reasons that in the early stages of the legislative process, the provision referred to "1% of *his* minimum base annual salary." 39 Mont. Op. No. 82 Atty. Gen. at 5 (emphasis added). The opinion surmises that the Legislature initially

13

intended to require "calculations based on the specific salary level of each individual undersheriff or deputy sheriff." 39 Mont. Op. No. 82 Atty. Gen. at 5. The opinion notes, however, that a conference committee changed the modifying article to "establish the amount of payment as '1% of *the* minimum base annual salary.'" 39 Mont. Op. No. 82 Atty. Gen. at 5 (emphasis added). The opinion concludes that the Legislature, through this change in the modifying article, "intended to standardize the base figure for longevity payment calculations by statutorily setting that figure at the minimum permissible level for each county." 39 Mont. Op. No. 82 Atty. Gen. at 5-6.

¶36 The opinion overreaches where it gleans this changed intent through a substitution of "the" for "his" as the modifying article. A change of "his" to "the" could have been proposed for reasons other than standardizing the calculation of deputies' minimum base annual salaries. The Legislature simply may have been attempting to draft laws that were gender neutral. Future attorney general opinions unfortunately approached the issue of deputy sheriffs' longevity based upon the erroneous interpretation in the 1981 opinion. See, e.g., 43 Mont. Op. No. 44 Atty. Gen. at 6 (November 28, 1989).

¶37 Nothing on the statute's face prevents the County from calculating longevity using a "minimum base annual salary" gauged to the individual deputy's rank, rather than on the statutory minimum. The County unilaterally changed its definition of "minimum base annual salary" in 2004 to the more limited definition despite having negotiated a different definition of "minimum base annual salary" for the deputies as part of its Agreement. The County cannot rely on its erroneous interpretation of § 7-4-2510, MCA, to justify its

14

unilateral departure from the terms of its Agreement with the Deputies.  The District Court correctly calculated the base salary used for Deputies' longevity pay using the percentage of the sheriff's salary that each individual Deputy earned as the base salary of their respective rank, as originally negotiated in the Agreement.

¶38 *Did the District Court correctly determine that the calculation of the deputy sheriffs' longevity pay includes the $2,000 supplement to the sheriffs' "base annual salary," found at § 7-4-2503(2)(b), MCA?*

¶39 The sheriff's salary contains two components: the amount established by the county governing board under § 7-4-2503(1)(a), MCA, and a statutory supplement under § 7-4-2503(2)(b), MCA.  The statutory supplement has been $2,000 since 1981.

¶40 The County conceded during this dispute that the "salary of that sheriff" included the $2,000 supplement to the sheriff's base salary for purposes of calculating the Deputies' salaries.  Section 7-4-2508(2)(a), MCA.  The County argued, however, that the $2,000 did not belong in the sheriff's salary when calculating longevity pay for the sheriff *or* the Deputies.

¶41 The County contends that, when the law governing *sheriffs'* longevity went into effect, the Legislature sought to "give sheriffs the same longevity payment that deputy sheriffs currently receive."  The law governing the calculation of sheriffs' longevity explicitly excludes the $2,000 supplement from the sheriffs' salary.  Section 7-4-2503(2)(c), MCA.  The County argues, therefore, that it also must exclude the $2,000 supplement from

15

the sheriff's salary when calculating the deputies' longevity pay in order to calculate longevity in a uniform manner.

¶42    We will not insert what the Legislature has omitted from a statute unless the result is contrary to the Legislature's clear intent. Section 1-2-101, MCA. No provision specifically excludes the sheriff's $2,000 statutory supplement from the definition of deputies' compensation or the definition of deputies' longevity. Section 7-4-2503(2)(c), MCA, by contrast, specifically excludes sheriff's longevity payment from the sheriff's salary for purposes of computing deputy sheriffs' compensation. If the Legislature likewise had wanted to exclude the $2,000 supplement from the sheriff's salary for purposes of computing deputy sheriffs' compensation or longevity, §§ 7-4-2503(2)(c) and 7-4-2510, MCA, would have been the appropriate places. Instead, the statute excludes only sheriffs' longevity payments from the calculation of the deputies' compensation. Section 7-4-2503(2)(c), MCA.

¶43    The County similarly contends that the deputies' "minimum base annual salary" represents a percentage of the sheriff's "base salary," set forth in § 7-4-2503(1), MCA, not the sheriff's actual salary that includes the $2,000 supplement contained in § 7-4-2503(2)(b), MCA. We disagree.

¶44    Section 7-4-2508(2)(a), MCA, provides that "[t]he sheriff shall fix the compensation of the deputy sheriff based upon a percentage of the *salary of that sheriff* according to the following schedule . . . ." (Emphasis added.) Nothing in that sentence suggests that the compensation of the Deputy should be based solely on the sheriff's "base salary." In fact,

16

the statute refers only to basing compensation on the entire "salary of that sheriff." Section 7-4-2508(2)(a), MCA.

¶45 Section 7-4-2510, MCA, requires that longevity should be one percent of the deputies' minimum base annual *salary*. A deputy's salary is achieved through the aforementioned calculation of compensation, based on the "salary of that sheriff" referred to in § 7-4-2508(2)(a), MCA. Therefore, the Court must factor the $2,000 statutory supplement into the sheriff's salary in calculating deputies' longevity. We agree with the District Court that a deputy sheriff's salary represents a percentage of the "salary of that sheriff." This salary includes the $2,000 supplement. Section 7-4-2503(2)(c), MCA.

¶46 *Did the District Court properly conclude that the County's "repeated violations" entitled the Deputies to recover back wages and penalties over a three-year period under § 39-3-207(3), MCA?*

¶47 The statutory wage and hour provisions entitle a successful claimant to recover past wages for the two years before their filing of a wage claim, or two years before their last day of employment. Section 39-3-207(2), MCA. If the employer has committed "repeated violations," however, the statute allows a successful claimant to recover past wages for the three years before the filing of the claim. Section 39-3-207(3), MCA. The statute nowhere defines "repeated violations."

¶48 The County argues that we should adopt the federal definition for "repeated violations" and apply it in Montana wage and hour cases rather than apply our plain meaning rule of statutory construction. The federal law provides that an employer's violation of

17

minimum wage or overtime pay laws is "repeated" (1) where the employer has previously violated the law and received notice from a responsible official of such violation, or (2) where a court or other tribunal has made a finding that an employer has previously violated the law. 29 C.F.R. § 578.3 (2006). The County contends that it did not commit repeated violations, as contemplated by § 39-3-207(3), MCA, between July 1, 2001 and February 14, 2004, because (1) no court ever had ordered that its payment of wages had been improper, and (2) the County had no independent knowledge from a responsible official that its payment of wages had been improper.

¶49 The Deputies argue in favor of the plain meaning interpretation used by the Department's hearing officer as well as the District Court. The hearing officer distinguished between the function of Montana's wage and hour statutes and the federal wage claim statutes. The federal statute requires that any penalty imposed against the employer must be paid to the federal government rather than to the employees who have been shortchanged. 29 U.S.C. § 216(c) (2003). The hearing officer stated, "the [Federal] regulation has no applicability to interpretation of Montana law, and to apply it here would violate the plain meaning rule of statutory construction." The District Court agreed: "The plain language of the statute does not require that an employer must be placed on notice of a violation before being subject to the longer recovery period, and neither the Department nor this Court can insert such a caveat."

¶50 To apply the meaning of "repeated" as used in the federal law would require additional language in the Montana statute to explain the implicit necessity of receiving

18

advance notice of a violation from a responsible official, court, or tribunal. Our rule is simply to "ascertain and declare what is in terms or in substance contained [in statutes], and not insert what has been omitted or omit what has been inserted." *Sink v. School Dist. No. 6*, 199 Mont. 352, 360, 649 P.2d 1263, 1267 (brackets in original, citation omitted). We instead infer from the unadorned use of "repeated" in the statute that the Legislature meant for its plain meaning to apply. *See State v. Martel*, 273 Mont. 143, 150, 902 P.2d 14, 19 (1995).

¶51 We agree with the District Court that "repeated violations" means more than one violation. The County repeatedly violated the wage and hour statute. First, the County failed to calculate salary and longevity properly for more than one deputy. The County failed to correct the mistake after one pay period. And finally, the County failed to recalculate longevity correctly after its error had been brought to its attention.

¶52 *Did the District Court correctly increase the penalty owed by the County to the Deputies from fifty-five percent to 110 percent of wages owed?*

¶53 Montana law provides for a penalty to be assessed against an employer who fails to pay wages within ten days of when they become due. Section 39-3-204, MCA. This penalty generally represents fifty-five percent of the wages due, unless special circumstances warrant the imposition of a higher penalty up to 110 percent of wages due. Admin. R. M. 24.16.7566(1). The four special circumstances include the employer failing to provide information requested by the Department or not cooperating in the Department's investigation of the wage claim, and the employer previously having violated similar wage and hour statutes within three years before the date of filing of the wage claim. Admin. R.

19

M. 24.16.7556. The Deputies argue that the County's conduct meets the criteria either for failing to provide information or previously having violated a similar wage and hour statute in December 2003.

¶54 The Department's final agency decision noted that gaps in the information provided by the County made it difficult to calculate accurately the amounts owed to the Deputies. The hearing officer imposed a fifty-five percent penalty on the County. The hearing officer imposed no sanctions despite having set a sanction schedule. We only can infer from the lack of analysis in the decision that the hearing officer determined that the County's actions did not rise to the level of employer misconduct contemplated by Admin. R. M. 24.16.7556. The hearing officer cited the absence of special circumstances in settling on a fifty-five percent penalty on wages, other than overtime, for the period of the claim. The District Court, by contrast, justified its decision to increase the penalty to 110 percent in light of the hearing officer's observation regarding the incomplete nature of the information provided by the County.

¶55 The County argues against the imposition of any penalty because the County (1) is a government entity and (2) relied in good faith upon attorney general opinions of ambiguous statutes. The County argues, in the alternative, that if any penalty is proper, it should be set at fifty-five percent because the County complied with requests for information as best it could. The County claims that it had to dissect three different computer systems to locate the necessary information. The County points to staffing problems that exacerbated its difficulty in withdrawing all the requested information from the various computer systems. The

County also asserts that the successful December 2003 longevity claim was not sufficiently similar to constitute a previous violation for purposes of enhancing the penalty percent to 110 percent. Admin. R. M. 24.16.7556.

¶56 Firefighters argued in *Kuhr v. City of Billings*, 2007 MT 201, ¶ 32, 338 Mont. 402, ¶ 32, 168 P.3d 615, ¶ 32, that the fact that the City had thrown away certain relevant payroll records supported the imposition of a penalty of 110 percent. We opted instead for a fifty-five percent penalty. *Kuhr*, ¶ 33. We refused to impose the higher penalty in the absence of substantial credible evidence that the employer's records had been falsified or had been intentionally misleading. *Kuhr*, ¶ 32. The same standard applies here. The Deputies must present substantial credible evidence that the County either failed to provide information requested by the Department or did not cooperate in the department's investigation of the wage claim. *Kuhr*, ¶ 32.

¶57 We defer to the hearing officer's determination that no special circumstances existed. We must infer from the hearing officer's lack of statements to the contrary that the County reasonably attempted to comply with the hearing officer's directives in light of the complicating factors in retrieving the salary information posed by the three computer systems used by the County. Similar to *Kuhr*, no substantial credible evidence exists on which to impose the higher penalty.

¶58 We also have increased a penalty to 110 percent where the facts show that a successful wage claim had been brought against the employer within three years before filing. In *Reier Broadcasting Co., Inc. v. Reier*, 2000 MT 120, ¶¶ 29-30, 299 Mont. 463,

¶¶ 29-30, 1 P.3d 940, ¶¶ 29-30, the District Court made a finding, and the employer did not refute it, that the employer recently had been subject to at least three similar wage claims by other employees. Substantial evidence substantiated that fact. The District Court's failure to take judicial notice of the Admin. R. M. 24.16.7556, and its subsequent failure to apply the maximum penalty, did not prevent this Court from doing so.

¶59 The District Court in this case likewise increased the penalty from fifty-five percent to 110 percent, in part, upon noting the hearing officer's determination that the County had lost a similar, although not identical, wage claim in 2003. The County does not contest the fact that it had lost a previous wage claim. The County contests the extent to which the previous wage claim was similar to the claims at issue here. The Deputies failed to provide substantial credible evidence regarding the similarity of the previous wage claim. We will defer to the hearing officer without more evidence in the record substantiating the nature of the previous wage claim. We reverse the District Court's order to recalculate the penalty and determine that the fifty-five percent penalty was appropriate.

## CONCLUSION

¶60 We affirm the District Court's order regarding jurisdiction, longevity, and "repeated violations," but we reverse the District Court's imposition of a 110 percent penalty. We instead remand to the District Court for imposition of the fifty-five percent penalty recommended by the hearing officer.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
Justice John Warner concurs.

¶61 I concurred with Justice Rice's dissent in *Kuhr*, that the Department may not arbitrarily fix one of only three penalties. *Kuhr*, ¶ 51 (Rice, J., dissenting). However, that decision of this Court is applicable precedent, and I am constrained by *stare decisis* to acquiesce. Thus, I sign the Court's decision.

/S/ JOHN WARNER

Justice Jim Rice, concurring in part and dissenting in part.

¶62 I concur with the Court's holdings under Issues 1, 2, and 3 regarding the Deputies' salary calculations. However, I dissent from the Court's holdings under Issues 4 and 5.

¶63 With respect to Issue 4, I disagree that the County engaged in "repeated violations" simply because its miscalculation of wages affected multiple deputies over the course of multiple pay periods. I believe the federal definition of "repeated violations" provides a persuasive basis for concluding that an employer should not receive additional punishment for failing to correct its violation unless it has been made aware of its violation through notice from a responsible official or pursuant to a previously adjudicated violation. Opinion,

23

¶ 46; 29 C.F.R. § 578.3 (2006). I see no reason to distinguish the federal rule on the ground that its penalties are to be paid to the government, while Montana requires that penalties be paid to the employees who have been shortchanged. This is a notice issue. Without knowledge that a violation is occurring, an employer should not receive an increased penalty for "repeating" that violation.

¶64    Moreover, even under the Court's plain meaning approach to "repeated violations," (¶ 49), I still do not agree that more than one violation occurred here. In my view, paying multiple employees an incorrect amount for a single period of time—be it one pay period or multiple pay periods—amounts to a single violation. As the County argues, to hold otherwise will lead to the absurd result that virtually all wage claims will involve "repeated violations" and will warrant recovery of penalties for the extended three-year period because the violations cover more than one consecutive pay period. We should be mindful that the employer will be assessed penalties in any event; the entire rationale for adding an additional year's worth of penalties is to punish those employers who consciously disregard our wage statutes, and to deter those employers who would try to get away with multiple, distinct violations. The County aptly points out that "[i]f the employer does not have some official notice that it is paying [wages] in error, punishing that employer makes little sense." Indeed, an additional year of penalties will not deter an employer who is unaware it is doing something wrong. Whether we adopt the federal definition, or use a plain meaning approach to "repeated violations," adding an additional year of penalties for a repeat violation

24

accomplishes nothing if the employer is unaware that it violated our wage laws in the first place.

¶65    Finally, under Issue 5, I reiterate my belief that the administrative rules setting penalty floors for wage violations are defective because they infringe upon and are in conflict with the broad discretion to impose penalties granted by § 39-3-206, MCA.  I thus dissent to the Court's analysis under Issue 5 for the reasons set forth in my dissent in *Kuhr v. City of Billings*, 2007 MT 201, ¶¶ 48-52, 338 Mont. 402, ¶¶ 48-52, 168 P.3d 615, ¶¶ 48-52. Although I would also reverse on this issue, I would remand to the District Court for imposition of the appropriate penalty pursuant to the discretion granted by the statute.


/S/ JIM RICE