DA 09-0108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 2

WHITEHALL WIND, LLC, a Montana
Limited Liability Corporation,

Plaintiff and Appellee,

v.

THE MONTANA PUBLIC SERVICE COMMISSION,
an Agency of the State of Montana,

Defendant and Appellant,

and

NORTHWESTERN ENERGY,

Intervenor.

APPEAL FROM:     District Court of the Fifth Judicial District,
                 In and For the County of Jefferson, Cause No. DV 03-10080
                 Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

          For Appellant:

                 Robin A. McHugh, Special Assistant Attorney General, Montana Public
                 Service Commission, Helena, Montana

          For Appellee:

                 Marc G. Buyske and Michael J. Uda; Doney Crowley Bloomquist Payne
                 Uda, P.C.; Helena, Montana

                            Submitted on Briefs:  October 21, 2009
                                       Decided:  January 5, 2010

Filed:

          _____
                                Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 The Montana Public Service Commission (PSC) and NorthWestern Energy (NorthWestern) appeal an order of the Fifth Judicial District Court, Jefferson County, reversing and remanding the PSC's order setting a standard tariff rate for NorthWestern Energy's purchase of electricity from Whitehall Wind (Whitehall). We affirm.

¶2 We review the following issues on appeal:

¶3 *Was the District Court's order for remand a final judgment under M. R. App. P. 6(1)?*

¶4 *Did the District Court properly determine that the PSC's tariff was unlawful and unreasonable?*

¶5 *Did the District Court properly allow Whitehall to augment the record?*

¶6 *Did federal law preempt the PSC's order setting the standard tariff rate?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 Congress enacted § 210 of the Public Utility Regulatory Policies Act (PURPA) in 1978 to encourage development of small electrical generation facilities. 16 U.S.C. § 824a-3 (2006). PURPA requires large utilities to purchase energy from smaller qualifying facilities at rates that allow the small facilities to become and remain viable suppliers of electricity. Whitehall is a qualifying facility under PURPA. 18 C.F.R. § 292.204 (2008).

¶8 Whitehall attempted unsuccessfully to negotiate a contract with NorthWestern for the sale of wind-generated electricity from Whitehall's 50 megawatt wind generation facility near Whitehall, Montana. Whitehall petitioned the PSC in August of 2002 to determine the

rates and conditions for the sale following the unsuccessful negotiations with NorthWestern.

¶9      State utility regulatory agencies implement PURPA through rulemaking. As the state utility authority for Montana, the PSC must set rates for electric utilities over which it has authority. The Montana Legislature enacted §§ 69-3-601 through 604, MCA, to facilitate the PSC's implementation of PURPA. Section 69-3-603, MCA, requires the PSC to set rates and conditions for sales between qualifying facilities and large utilities.

¶10     The PSC determined that Whitehall constituted a qualifying facility under PURPA. This determination entitled Whitehall to sell electricity to NorthWestern at the wholesale rate. The PSC held a contested case proceeding to determine the wholesale rate. The PSC set the rate for the sale at the short-term standard avoided cost tariff rate for transactions between NorthWestern and qualifying facilities. NorthWestern had not submitted a least cost plan since 1996. As a result, the PSC considered avoided cost data from 1996 when it set the 2002 rate. The PSC's Order no. 6444c set a rate of $10.639 per megawatt hour (MWh).

¶11     Whitehall petitioned for judicial review. Whitehall claimed that the PSC had reached an unreasonably low rate determination in light of data submitted by Whitehall and the PSC that supported a higher rate. Whitehall argued that a reasonable 2002 rate should have been between $31 and $40 per MWh.

¶12     Whitehall moved to augment the record. Whitehall claimed that the PSC's failure to require NorthWestern to produce avoided cost data since 1996 in compliance with statutory

3

and regulatory provisions constituted a procedural irregularity that supported its effort to augment the record. Whitehall further requested permission to conduct limited discovery to produce evidence of NorthWestern's current avoided costs. The District Court granted Whitehall's motion to augment.

¶13 The PSC's staff economist submitted a report in response to the District Court's order to augment the record. The report confirmed that a reasonable 2002 rate would have been approximately $31 to $32 per MWh. Whitehall requested that the District Court remand the case to the PSC with instructions to set a new rate based on current data for the project's rescheduled completion date of 2009. The PSC and NorthWestern argued that the District Court's jurisdiction extended only to a review of the 2002 rate data.

¶14 The District Court found that the PSC's rate determination was unreasonable because it was not supported by substantial evidence. The court found that the evidence of the PSC's own staff economist contradicted the PSC's rate determination. The District Court determined that the PSC had not based the rate determination on current avoided cost data. The court remanded the case with instructions to the PSC to set a new rate that would take into account the avoided cost data submitted by Whitehall and the PSC.

## STANDARD OF REVIEW

¶15 A district court reviews an administrative decision in a contested case to determine whether the agency's findings of fact are clearly erroneous and whether its interpretation of the law is correct. *Clouse v. Lewis and Clark County*, 2008 MT 271, ¶ 23, 345 Mont. 208,

4

190 P.3d 1052. We employ the same standard when reviewing a district court order affirming or reversing an administrative decision. *Clouse*, ¶ 23.

## DISCUSSION

¶16 *Was the District Court's order for remand a final judgment under M. R. App. P. 6(1)?*

¶17 Whitehall argues as a threshold issue that the District Court's order constitutes an interlocutory judgment that should not be appealable by the PSC. An interlocutory judgment determines a preliminary issue, but does not finally decide the case. M. R. App. P. 4(1)(b). Whitehall emphasizes the fact that the District Court's order did not set a rate or direct the PSC to set a particular rate. Whitehall contends that the PSC must amend its rate determination in compliance with the District Court's order before it may appeal.

¶18 A party may appeal only a district court's final judgment. M. R. App. P. 6(1). A "final judgment" conclusively determines the rights of the parties and settles all claims in controversy. M. R. App. P. 4(1)(a). Section 2-4-702, MCA, provides for judicial review of an agency decision in a contested case. The District Court reviewed Whitehall's case and decided in Whitehall's favor based on the standards set out at § 2-4-704, MCA. The District Court's review of the whole record led it to conclude that the PSC's rate was unreasonable. To force the PSC to recalculate the rate in accordance with the District Court's specific instructions before allowing it to appeal would undermine the PSC's right to appeal under § 2-4-711, MCA. The District Court's order constitutes a final order from which the PSC has a right of appeal. M. R. App. P. 4(1)(a).

5

¶19 *Did the District Court properly determine that the PSC's tariff was unlawful and unreasonable?*

¶20 Federal law requires that rates for utility purchases of qualified facility-generated electricity must be reasonable. 16 U.S.C. § 824a-3(b)(1) (2006); 18 C.F.R. § 292.304(a)(1)(i) (2008). The PSC must set rates based on 16 U.S.C. § 824a-3 and 18 C.F.R. § 292. Federal regulations require rates to be based on avoided costs. 18 C.F.R. § 292.304(b)(2) (2008).

¶21 Montana law allows the PSC to take avoided costs into account when setting rates and has adopted by reference the relevant federal regulations. Section 69-3-604, MCA; Admin. R. M. 38.5.1901-1905. The PSC requires utilities to submit avoided cost data every other year within thirty days of submitting an integrated least cost resource plan. Admin R. M. 38.5.1905, 2012. Thus, under both state and federal law, rates for purchases from qualifying facilities must be reasonable and based on current avoided least cost resource data. *Independent Energy Producers Ass'n v. California Pub. Utils. Comm'n*, 36 F.3d 848, 851-852 (9th Cir. 1994); 18 C.F.R. § 292.304; § 69-3-604, MCA. At the time that Whitehall petitioned the PSC in 2002, NorthWestern had not submitted avoided least cost data since 1996.

¶22 A district court may review an agency's final decision in a contested case hearing. Section 2-4-702, MCA. The court generally must confine its review to the administrative record. Section 69-3-404, MCA. The court may reverse or modify an agency decision if the appellant's substantial rights have been prejudiced by a clearly erroneous decision "in view

6

of the reliable, probative, and substantial evidence on the whole record." Section 2-4-704(2)(a)(v); *Montana-Dakota Utils. Co. v. Montana Dept. of Pub. Serv. Reg.*, 223 Mont. 191, 198, 725 P.2d 548, 553 (1986).

¶23 The PSC claims that the District Court ignored or misinterpreted the information provided by the PSC's economist. The PSC argues that a meaningful distinction exists between a "lawful rate" and a retrospectively determined "reasonable rate." The PSC acknowledges that the definition of a "reasonable rate" changes over time, but asserts that the PSC's determined rate remains lawful until it amends that rate. The PSC therefore claims that the "legal rate" of $10.639 per MWh should remain in effect until the PSC implements a new "legal rate" based on updated data.

¶24 The PSC's argument ignores the rules it has implemented and is empowered to enforce. An administrative agency must comply with its own administrative rules. *Mont. Solid Waste Contrs. v. Mont. Dep't. of Pub. Serv. Reg.*, 2007 MT 154, ¶ 18, 338 Mont. 1, 161 P.3d 837. A district court may overturn a clearly erroneous agency decision notwithstanding any deference due to the agency. Section 2-4-704, MCA.

¶25 The PSC predicates its argument that the rate was valid on the fact that its Order No. 6444c complies with Admin. R. M. 38.5.1902(5). The rule requires the qualifying facility to be selected through a competitive solicitation process for long term contracts between a utility and a qualifying facility. Admin. R. M. 38.5.1902(5). The PSC sets the rate for sales of energy falling between competitive solicitations in accordance with the most recent avoided cost tariff. Admin. R. M. 38.5.1902(5). The PSC emphasizes that Admin. R. M.

7

38.5.1902(5) dictates the procedure that it must follow to set rates for sales of the kind at issue here. Whitehall does not contend that the PSC failed to follow the procedure set out by Admin. R. M. 38.5.1902(5). The fact that the PSC complied with Admin. R. M. 38.5.1902(5) does not end the inquiry.

¶26 The PSC's argument glosses over the issue of how it arrived at the standard avoided cost tariff of $10.639 per MWh for the Whitehall petition. The PSC's Order No. 6444c outlined the process for setting prices for sales of electricity between utilities and qualified facilities set out by Admin. R. M. 38.5.1902 and 1905. The PSC admitted in its order that Admin. R. M. 38.5.1905 controls the procedure for establishing the standard avoided cost tariff rate. The PSC observed correctly that a utility must re-compute the long and short-term standard avoided cost rates after it submits an updated least cost filing plan. Admin. R. M. 38.5.1905(1). The PSC further noted in its order that the rate for sales may not exceed the utility's avoided costs. Admin. R. M. 38.5.1905(3).

¶27 The PSC failed to note, however, that such avoided costs must be calculated either at the time of delivery of the energy, or at the time that the utility incurs the obligation. Admin. R. M. 38.5.1905(3)(i), (ii). The PSC also failed to observe that the short-term standard avoided cost tariff must be calculated within 30 days of the utility's filing of its least cost resource plan. Admin. R. M. 38.5.1905(1). Utilities must file least cost plans every two years. Admin. R. M. 38.5.2012.

¶28 NorthWestern had not filed a least cost resource plan since 1996. The PSC based the avoided cost tariff on out-of-date data in violation of Admin. R. M. 38.5.1905. The PSC's

8

staff economist verified that the avoided cost rate set by the PSC was approximately one third of an appropriate 2002 rate. The District Court properly determined, based on the whole record, that the PSC's calculation of the avoided cost rate for the sale between Whitehall and NorthWestern was clearly erroneous.

¶29 *Did the District Court properly allow Whitehall to augment the record?*

¶30 Whitehall petitioned the District Court to augment the record to include 2002 avoided cost data from NorthWestern and data supporting the imposition of revised 2009 rates. A district court may receive additional evidence relating to a challenged rate in the case of "alleged irregularities in procedure before the agency not shown in the record." Section 69-3-404(2), MCA.

¶31 Whitehall based its motion on the PSC's failure to require NorthWestern to produce current avoided cost data in conformance with Admin. R. M. 38.5.1905 and 2012. The District Court found that the record contained "evidence that NWE has not submitted avoided cost data to the PSC since 1996." The court further found that "the evidence is insufficient for the Court to make a determination whether the procedural irregularity alleged by [Whitehall] actually occurred."

¶32 The PSC argued that any procedural irregularities that might have occurred would have been contained in the record. The PSC further argued that § 2-4-703, MCA, precluded augmentation of the record because Whitehall had not made the necessary showing. Section 2-4-703, MCA, allows for the receipt of additional evidence on judicial review of an agency

decision only where such evidence is material and good reasons support why the evidence had not been presented in the contested case proceeding.

¶33 The District Court concluded that Whitehall had alleged a sufficient procedural irregularity not shown in the record to justify augmentation. The District Court noted that Whitehall had predicated its motion to augment the record on § 69-3-404(2), MCA, which allows for augmentation of the record in case of an alleged procedural irregularity. The court properly confined its analysis to that statutory provision. The District Court concluded that it could not determine whether the alleged procedural irregularity had occurred based on the record before it. The court appropriately granted Whitehall's motion to augment the record.

¶34 *Did federal law preempt the PSC's order setting the standard tariff rate?*

¶35 The PSC claims on appeal that nothing in federal law preempts Admin. R. M. 38.5.1902(5). The PSC raises this argument in response to an issue that Whitehall raised in its initial brief before the District Court and a short discussion of preemption in the PSC's Order no. 6444c.

¶36 Whitehall did not argue that federal law preempted any particular administrative rule. The District Court never addressed whether federal law preempted any particular administrative rule. Whitehall argued instead that the PSC's interpretation of its own administrative rules placed an inappropriate emphasis on state goals at the expense of the federal goals embodied by PURPA. We decline to address that argument here, however, in light of Whitehall's failure to raise the issue of federal preemption of any specific administrative rule and the fact that the District Court did not address the issue.

¶37   Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE